## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SOCIETY OF THE DIVINE WORD )
Chicago Province; NATIONAL )
SPIRITUAL ASSEMBLY OF THE )
BAHA'IS IN THE UNITED STATES; )
ILLINOIS GREAT RIVERS )
CONFERENCE OF THE UNITED )
METHODIST CHURCH; PONTIFICAL )
INSTITUTE FOR FOREIGN )
MISSIONS; BROWN MISSIONARY )
BAPTIST CHURCH; INDIA HERITAGE )
FOUNDATION, NJ/NY INC.; )
BAPTIST MID-MISSIONS; )
GENERAL SECRETARIAT OF THE )
FRANCSICAN MISSIONS, INC.; )
THE ROMAN CATHOLIC DIOCESE )
OF DES MOINES; FIRST BAPTIST )
CHURCH OF KALAMAZOO; )
GRACE-TRINITY UNITED CHURCH )
OF CHRIST; BIRMINGHAM )
CHINESE CHRISTAIN CHURCH; )
DIOCESE OF PEORIA, ILLINOIS; & )
MISSIONARY SISTERS SERVANTS )
OF THE HOLY SPIRIT, )
    Plaintiffs, )
     )
     )
    vs. )
     ) Civ. No. 21-3650
UNITED STATES CITIZENSHIP AND )
IMMIGRATION SERVICES (USCIS), ) COMPLAINT FOR DECLARATORY,
ALEJANDRO MAYORKAS, Secretary ) INJUNCTIVE, MANDAMUS AND
of the Department of Homeland Security, ) OTHER RELIEF
and DONNA P. CAMPAGNOLO )
Director, USCIS California Service ) Judge Robert W. Gettleman
Center (CSC), )
     )
    Defendants. )

## SECOND AMENDED COMPLAINT

### I.    Introduction

Plaintiffs are Internal Revenue Act § 501(c)(3) tax-exempt religious institutions that have their headquarters in the United States. They exercise their religious beliefs and advance them in practice by employing foreign-born ministers and international religious workers. The plaintiffs rely on fair and effective legal mechanisms to select and employ those workers in the United States. They complain that the defendants' regulations, policies, and practices discriminate against U.S.-based religious employers and their selected international religious workers, while interfering with their rights to appoint and employ ministers, and thus violate the First Amendment of the United States Constitution's Free Exercise and Establishment Clauses, the Due Process and Equal Protection Clauses, the Religious Freedom Restoration Act, the Immigration and Nationality Act, and the Administrative Procedure Act, by providing benefits and advantages to non-religious employers that they expressly withhold from religious organizations. *See e.g. Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. ___ , 137 S. Ct. 2012 (2017); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 521-533 (1993) (non-neutral laws and practices that impose special disabilities on religion are subject to exacting or strict scrutiny).

Beyond the unconstitutional harm of disparate and discriminatory treatment, the direct result of these policies, combined with the defendants' unfathomable delays in deciding requests for immigration benefits, exceeding two years in most cases, is to deprive the plaintiffs of both Constitutional and statutory rights and opportunities to employ their chosen foreign-national religious ministers and religious workers in the United States to advance their religious ministries, require plaintiffs to divert scarce resources and choose between employing their chosen ministers or facing civil penalties, and impose additional burdens on them that secular employers do not face.

The plaintiffs, and all religious organizations that file I-360 petitions, face similar harms arising from the defendants' discriminatory policies.  These include:

- By USCIS's excluding them from available programs like concurrent filing and premium processing, U.S.-based religious organizations may need to dismiss ministers or put their R-1 ministers and religious workers on temporary leave while in the United States or possibly require them to depart the United States at the end of reaching their 5-year maximum in R-1 status;

- U.S.-based religious employers may need to file for R-1 extensions for employees who may be eligible for extensions or to recapture time the employees spent outside the United States, thus incurring additional delays, costs, and diversion of resources from the religious mission;

- U.S.-based religious organizations may need to divert resources to request expedited action from USCIS, seek Congressional assistance, or possibly come up with other workarounds, including repeated petitions or applications for immigrant benefits early or prophylactically before they have made final employment or placement decisions, just to ensure ongoing employment authorization for necessary religious workers;

- U.S.-based religious employers may face potential liability for employer sanctions if they choose to exercise their religion by continuing to employ religious workers beyond the period of their authorized stay in the U.S., or violating their religious beliefs and exercise by ceasing such religious employment;

- Religious workers' dependent minor children may age out of eligibility due to USCIS delays;

- Religious organizations may hesitate and refrain from bringing other non-citizen religious workers in the future due to uncertainties with USCIS delays.

## II.       Jurisdiction and Venue

1. The Court has subject matter jurisdiction in this action pursuant to: 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201 (Creation of Remedy- Declaratory Judgment Act); 28 U.S.C. § 1361 (mandamus jurisdiction); 42 U.S.C. § 2000bb, *et seq.* (Religious Freedom Restoration Act); the First Amendment to the U.S. Constitution (Establishment and Free Exercise Clauses); and the Fifth Amendment to the U.S. Constitution (Due Process and Equal Protection Clauses).  This case does not involve any discretionary action that might deprive the Court of jurisdiction, but rather involves questions of law.  This Court's authority to order appropriate relief for agency inaction is clear.  *See, e.g. Iddir v. I.N.S.,* 301 F.3d 492 (7th Cir. 2002).

2. This action also arises under 5 U.S.C. § 701 *et seq.* (Administrative Procedure Act) to compel agency action unlawfully withheld or unreasonably delayed, and to hold unlawful certain agency actions. 5 U.S.C. §§ 706(1) and (2).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C). The defendants are officers or employees of the United States or agencies of the United States acting in their official capacity.  Two of the plaintiffs reside in this district and no real property is involved in this action.

## III.       The Parties

4. Plaintiff Society of the Divine Word, Chicago Province ("SVD" as it is known from its Latin name Societas Verbi Divini) is an international religious order of missionary Roman Catholic priests and brothers based in Techny, Illinois within the jurisdiction of

this Court. The Chicago Province of SVD provides priests to serve at Roman Catholic parishes and other locations throughout Illinois; other states east of the Mississippi River, including Wisconsin, Iowa, Pennsylvania, West Virginia, Tennessee, Missouri, Ohio, and New Jersey; Canada; and the Caribbean Islands. It has a campus and notable presence in the Techny/Northbrook area just north of Chicago. It also runs the only Catholic missionary preparatory college in the United States, Divine Word College, located in Epworth, Iowa. As an international religious order, the SVD is a regular user of the defendants' Religious Worker visa programs in order to facilitate travel and admission of its foreign-born members for purposes of religious work, study, and religious visits and observances in the United States.

5. Plaintiff the National Spiritual Assembly of the Baha'is in the United States has its administrative offices in Evanston, Illinois within the jurisdiction of this Court. The National Spiritual Assembly of the Baha'ís of the United States is dedicated to the belief that humanity is one single race and the day has come for its unification in one global society. It employs members to serve around the world, including at the Baha'í International Community (BIC), which represents the Baha'í Faith and acts on behalf of its 184 national affiliates in religious and non-governmental activities at the United Nations in New York City, maintaining an extensive portfolio of issues and thematic areas that it follows and engages in within the framework of the U.N.'s Economic and Social Council. Guided by the teachings of the Baha'í Faith, the BIC strives to further U.N. discourses and processes in the field of development, human rights, sustainability, the equality of women and men and the role of religion in society by offering those

insights and approaches that affirm the importance of the coherence between the material and spiritual aspects of human life.

6. Plaintiff Illinois Great Rivers Conference of the United Methodist Church (IGRC-UMC) is comprised of approximately 830 local churches in 87 counties of central and southern Illinois, and has its administrative offices in Springfield, Illinois. IGRC-UMC is a part of the General Council on Finance and Administration of the United Methodist Church, which includes all United Methodist Conferences within the United States, and which has its offices in Nashville, Tennessee. Members of the United Methodist clergy are appointed to serve as Pastors at local churches within the IGRC-UMC by the Conference's Bishop, Frank J. Beard. IGRC-UMC regularly files immigrant and non-immigrant petitions with the USCIS to allow United Methodist clergy from abroad to fill vacant pastoral positions at United Methodist churches within Illinois. Those pastors lead Sunday worship services, direct religious education, conduct baptisms, weddings, and funerals for church members, and generally provide pastoral and spiritual care to the church.

7. Plaintiff Pontifical Institute for Foreign Missions (PIME) is a Roman Catholic religious organization founded in 1850 and composed of Catholic priests and brothers serving in developing countries around the world to provide humanitarian and missionary services to those in need. PIME also has a U.S. Mission Center, in Detroit, Michigan, which supervises international mission projects and shares mission awareness throughout the United States. It uses the religious worker visa program to sponsor foreign-born priests and brothers whose services are needed at the U.S. Mission Center.

8. Plaintiff Brown Missionary Baptist Church is a Baptist church founded in 1882 and currently located in Southaven, Mississppi. Brown Missionary Baptist Church is seeking to establish a Hispanic ministries program in its community to reach out to local immigrants and for this purpose is using the religious worker visa program to sponsor a Spanish-speaking pastor from Peru.

9. Plaintiff India Heritage Foundation, NJ/NY Inc. is a religious non-profit organization established in 2014 in Edison, New Jersey committed to preserving the best-practiced traditions of the Vedas (ancient Hindu texts) and to promote them among youth of Indian descent around the world. As part of this effort, the India Heritage Foundation seeks to use the religious worker program to sponsor Hindu priests from India.

10. Plaintiff Baptist Mid-Missions, located in Cleveland, Ohio, is a Baptist religious organization that conducts religious missions in countries throughout the world, including the United States, in partnership with Baptist churches, to strategically advance the building of Christ's church. The organization uses the religious worker visa program to sponsor foreign-born missionaries for service in the United States.

11. Plaintiff General Secretariat of the Franciscan Missions, Inc. (Franciscans), based in Burlington, Wisconsin, is part of the Franciscan religious order, an international Roman Catholic religious order inspired by St. Francis of Assisi that provides religious and missionary services in many countries, including the United States. The General Secretariat was formed to assist Franciscan missions around the world and educate communities about the contributions of these missions. The organization uses the religious worker visa program to sponsor foreign-born staff members, including members of Franciscan orders serving in furtherance of their religious vocation.

12. Plaintiff The Roman Catholic Diocese of Des Moines is a Roman Catholic Diocese in the United States consisting of over 80 parishes and 100,000 members in central Iowa. The Diocese uses the religious worker visa program to sponsor foreign-born priests to staff its parishes.

13. Plaintiff First Baptist Church of Kalamazoo, located in Kalamazoo, Michigan, is a member congregation of the American Baptist Churches and is using the religious worker visa program to sponsor a foreign-born pastor.

14. Plaintiff Grace-Trinity United Church of Christ is a Christian church located in Philadelphia, Pennsylvania founded 25 years ago to connect people who are new to the city. It is using the religious worker program to sponsor a foreign-born pastor.

15. Plaintiff Birmingham Chinese Christian Church (also "BCCC") was formed in 1984 and is an integral part of Birmingham, Alabama's nondenominational Chinese speaking community, with some 115 members attending services each week. It is using the religious worker program to sponsor its foreign-born minister.

16. Plaintiff Diocese of Peoria, Illinois is the Roman Catholic Diocese serving the area in and around Peoria, Illinois. It uses the religious worker program to sponsor foreign-born priests.

17. Plaintiff Missionary Sisters Servants of the Holy Spirit (SSpS) is an international Roman Catholic religious order for women with approximately 3,000 members from 50 countries. Its U.S. Motherhouse is located in Northfield, Illinois. It uses the religious worker program to sponsor foreign-born sisters coming to the United States to serve in their religious vocation.

18. Defendant United States Citizenship and Immigration Services (USCIS) is a federal agency within the Department of Homeland Security responsible for adjudicating immigration benefit applications.

19. Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the Department of Homeland Security (DHS). The Secretary of Homeland Security is responsible for the administration and enforcement of laws related to the immigration of foreign nationals. *See* 8 U.S.C. § 1103(a)(1).

20. Defendant Donna Campagnolo is sued in her official capacity as the USCIS's Director of the California Service Center (CSC). She is responsible for the administration of the CSC, the USCIS service center that adjudicates Form I-360 petitions for religious ministers and other religious workers.

### IV. Facts and Relevant Statutory and Regulatory Provisions

21. Plaintiffs all use and rely on the fair and timely adjudication of immigrant visa petitions and applications for immigration benefits to ensure their ability to select ministers of their own choosing, employ religious workers in the United States, prepare students and other religious adherents, and invite religious visitors to participate in protected religious worship and other activities in the United States.

### The Immigration and Nationality Act (INA) Provisions for Ministers and Religious Workers

22. The INA provides up to 5,000 visas per fiscal year to certain ministers of religious denominations, religious professionals in religious vocations or occupations, or other religious workers in religious vocations or occupations. 8 U.S.C. §§ 1153(b)(4); 1101(a)(27)(C)(ii). Visa applicants may be living overseas or already in the United States and many individuals who are already present in this country entered on a non-

9

immigrant visa, also known as an R-1 visa. *See Id.* § 1101(a)(15)(R). Individuals who hold R-1 visas may stay in the United States for up to five years. *Id.* § 1101(a)(15)(R)(ii). R-1 visa holders must depart after five years unless they seek to "adjust status" prior to the expiration of their R-1 status. If the alien does none of these things, then he or she will be considered in violation of status and his or her presence in the United States will be unlawful, making him or her ineligible to adjust status. 8 U.S.C. §§ 1255(c), (k). Further, if the alien accrues a period of unlawful presence of more than 180 days, the alien is statutorily ineligible for adjustment of status, and becomes inadmissible and cannot return to the United States for periods of three to ten years thereafter. *Id.* §§ 1255(k); 1182(a)(9)(B)(i)(I)-(II) and (ii).

**The INA's Provisions Relating to Petitions by Non-Religious Employers, Ministers, Religious Workers, and their Employers**

23. Special immigrant ministers and other religious workers, or their employers acting on their behalf, can seek classification by filing a petition under 8 U.S.C. § 1154(b)(4). 8 U.S.C. § 1154(a)(1)(G)(i). This section imposes no preconditions on when the minister or religious worker may file the petition, though certain other types of special immigrants may need a prerequisite recommendation before being allowed to do so. 8 U.S.C. § 1154(a)(1)(G)(ii). Other employment-based immigrant preference categories, defined at 8 U.S.C. § 1153(b)(1) (priority worker categories), (2) (advanced degree and exceptional ability workers category), (3) (professionals and skilled workers), and (5) (job creation category), allow either the person seeking classification or their employer, depending on the category, to file a petition for classification with the Attorney General (read Secretary of Homeland Security after the Homeland Security Act of 2003 transferred authority

from the Attorney General to the Secretary of DHS). These categories are known as the EB-1, EB-2, EB-3, EB-4, and EB-5 immigrant preference categories respectively.

**Defendants' Regulations Requiring Petitions for Employment-Based Immigrants**

24. USCIS regulations specify use by non-religious employers of its Form I-140 Petition for Immigrant Worker, to classify workers in the EB-1, EB-2, and EB-3 preference categories of 8 U.S.C. § 1153(b)(1)-(3), while religious workers and their employers under 8 U.S.C. § 1153(b)(4) file for classification on Form I-360. 8 C.F.R.§ 204.5(a).

**The INA's Provisions for Adjustments of Status**

25. In addition to filing a Form I-360 petition, a non-citizen seeking to adjust status to that of a lawful permanent resident must apply for adjustment of status through Form I-485. Under the INA, applicants may adjust status if (1) they make an application; (2) they are eligible to receive a visa; and (3) a visa is immediately available. 8 U.S.C. § 1255(a). The INA does not specify when a visa is immediately available or when the applicant may make an application, but applicable regulations make clear that this is when the Visa Bulletin states that the specific visa category has visas available in it. 8 C.F.R. § 245.1(g)(1) ("A preference immigrant visa is considered available for accepting and processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current).").

26. Notwithstanding 8 C.F.R. § 245.1(g)(1), and in apparent contradiction to it, 8 C.F.R. § 245.2(a)(2)(i)(B) allows special immigrant religious workers to file a Form I-485 application for adjustment of status to lawful permanent resident only after USCIS approves a Form I-360 petition. Other classes of alien workers may file a petition for a

visa and a Form I-485 application for adjustment of status at the same time, which is
known as concurrent filing.  *Id.*

**Defendants' Processing Delays Causing Religious Workers to Become Ineligible to Adjust Status**

27. Since R-1 status is time-limited, the ability to timely file an I-485 adjustment of status
application can be important to avoid interrupting religious workers' employment in the
United States.  Based on information, taken from the defendants' website, and belief,
backlogs in processing I-360 petitions for religious workers and I-765 applications for
employment authorization have steadily grown over the past several years:

Processing Time Delays - I-360 processing time delays for Religious workers

### I-360

| | |
|---|---|
| March 3, 2020 | 5 to 7 months |
| June 18, 2020 | 7 to 9.5 months |
| June 24, 2020 | 8 to10.5 months |
| July 29, 2020 | 8.5 to 11 months |
| August 24, 2020 | 9.5 to 12.5 months |
| October 16, 2020 | 10.5 to 13.5 months |
| October 28, 2020 | 11.5 to 15 months |
| December 29, 2021 | 13.5 to 17.5 months |
| January 25, 2021 | 15 to 19.5 months |
| February 19, 2021 | |
| February 23, 2021 | 16.5 to 21 months |
| April 9, 2021 | 17 to 22 months |
| April 13, 2021 | 17 to 22 months |
| April 28, 2021 | 18.5 to 23.5 months |
| June 1, 2021 | 19 to 24.5 months |
| June 24, 2021 | 20-26 months |
| October 3, 2021 | 20.5-27 months |

The USCIS will not accept inquiries about even long-pending I-360 petitions.  According
to the defendant USCIS's website, the California Service Center's processing times for I-360
petitions includes the information:  "Receipt date for a case inquiry" is July 19, 2019."
(https://egov.uscis.gov/processing-times/) (last visited October 3, 2021).

**Defendants' Policies Designed to Alleviate the Impact of Delays for Non-Religious Employers that do not Extend to Religious Employers**

28. To prevent USCIS processing delays from thwarting Congress's policy to permit employment-based immigration, both Congress and the defendants have enacted certain safeguards to help persons facing these types of delays.

**INA § 245(k), 8 U.S.C. § 1255(k)- Congress's Intent to Protect All Employment-Based Immigrants' Eligibility to Adjust Status Notwithstanding USCIS Processing Delays**

29. In 1997, Congress enacted legislation on adjustment of status applicants. Among other provisions, recognizing that then Immigration and Naturalization Service (INS) delays were causing employment-based applicants to lose employment and to protect their employers, Congress allowed certain employment-based visa applicants to adjust status under § 245(a) if they have not been out of status for an aggregate period exceeding 180 days. PL. 105-119, title L § 111, 111 Stat. 2440, 2458-59 (Nov. 26, 1997). Section 245(k) applies to religious workers under the EB-4 category as well as non-religious workers in the EB-1, EB-2, and EB-3 categories, but by its terms does not protect adjustment of status applicants who are out of status or who work without authorization beyond 180 days.

**Congressional Policy Regarding Processing Times**

30. Consistent with § 245(k), Congress has also legislated, both generally and in pertinent part at 8 U.S.C. § 1571(b), that: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application…."

**Concurrent Filing for Non-Religious Employment-Based Adjustment Applicants**

31. USCIS regulations permit employers and employees in the EB-1, EB-2, and EB-3 categories to file I-140 visa petitions and I-485 applications for adjustment of status "whether submitted concurrently with or subsequent to the visa petition…." 8 C.F.R. § 245.2(a)(2)(i)(B). This concurrent-filing benefit protects the employee from becoming ineligible to file for adjustment of status through a status violation or unauthorized employment. A critical benefit for adjustment applicants subject to processing delays is that they are eligible to receive employment authorization based on their pending I-485. 8 C.F.R. § 274a.12(c)(9). But 8 C.F.R. § 245.2(a)(2)(i)(B) restricts religious workers, for whom "the alien beneficiary may file the adjustment application *only after the Service has approved the visa petition.*" (emphasis supplied).

**Premium Processing**

32. Another way Congress sought to protect employment-based immigration was to authorize the Department of Homeland Security "to establish and collect a premium fee" for certain immigration petitions. 8 U.S.C. § 1356(u).

33. USCIS, however, permits premium processing only for certain "employment-based benefit requests" that it designates. 8 C.F.R. § 106.4(e). Specifically, USCIS permits many I-140 petitioners to obtain premium processing adjudications, but not I-360 religious petitioners. *See,* https://www.uscis.gov/i-907; https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing.

34. Extending concurrent filing and premium processing to Forms I-360, which defendants do for non-religious employers, would alleviate the burdens that the ballooning delays impose on religious employers, by providing their religious workers with employment authorization, travel authorization, and protection from the consequences of being

unlawfully present in the United States, while their adjustment of status applications are being processed.

**Relevant Facts Relating to Plaintiff Society of the Divine Word (SVD)**

35. At the time of this Complaint, plaintiff SVD has filed I-360 petitions for five of its members, each one an ordained Catholic priest who is serving in R-1 status in the United States. These members include:

   a. Fr. Francis Xavier Rayappan, a citizen of India, who has been serving at Divine Word College in Epworth, Iowa, as part of the SVD's recruiting, vocation, and formation team. In May of 2021 the SVD's Provincial Superior for the plaintiff, The Very Rev. Quang Duc Dinh, assigned Fr. Rayappan to the Midwest District of the Chicago Province to serve as a Catholic priest to the newly unified parish of Our Lady of Africa in Chicago. The SVD filed an I-360 petition for him on October 3, 2019, Receipt # WAC 2090001002. Because the regulations prohibit concurrent filing and premium processing, in September 2020 the SVD filed to recapture time he spent outside the United States and extend his R-1 status. On June 24, 2021, USCIS approved the extension, but Fr. Rayappan's R-1 status reached its five-year maximum on July 20, 2021. Although USCIS approved his I-360 after the original complaint in this case was filed, and Fr. Rayappan then filed an application for adjustment of status, Receipt # LIN2190506736, USCIS has still not approved his application for employment authorization based on his pending application for adjustment of status, Receipt # LIN2190506738. Therefore SVD has had to place Fr. Rayappan on leave to avoid employer sanctions.

b.  Fr. Thien Duc Nguyen, a citizen of Vietnam, who is serving as the pastor at St. Thomas' Parish, Gassaway, West Virginia. The SVD filed an I-360 petition for him on March 4, 2020, Receipt # WAC 2090002001. Fr. Nguyen's R-1 status expired on May 15, 2021.  Since he could not concurrently file an I-485 adjustment application, and the SVD could not request premium processing due to the defendants' rules, the SVD was required to expend administrative and financial resources to further extend his R-1 status with a petition that is pending, Receipt # WAC 2120451075.   USCIS approved Fr. Nguyen's I-360 after the original complaint in this case was filed, and Fr. Nguyen is preparing to file an application for adjustment of status and accompanying application for employment authorization.  But his R-1 status will again expire and reach its maximum on December 21, 2021, even if his most recent extension is approved. If USCIS has not approved his application for employment authorization by then, SVD will have to place Fr. Nguyen on leave or risk employer sanctions.

c.  Fr. Romeo Mongaya Bacalso, a citizen of the Philippines, who is serving as the administrator at St. Patrick's parish in Hinton, West Virginia.  The SVD filed an I-360 petition for him on February 09, 2021, Receipt # WAC 2190052292. USCIS approved Fr. Bacalso's I-360 after the original complaint in this case was filed, and Fr. Bacalso is preparing to file his application for adjustment of status and accompanying application for employment authorization.  But Fr. Bacalso's R-1 status will expire on January 1, 2022, and if USCIS does not approve his application for employment authorization by this date SVD will have to place him on leave or risk employer sanctions.

d. Fr. Phelim Jordan, who is a citizen of Ireland. His I-360 petition was filed on September 22, 2020, Receipt # WAC 2090172050. He is serving at the SVD's Divine Word House in Washington, D.C. USCIS approved Fr. Jordan's I-360 after the original complaint in this case was filed, and Fr. Jordan is preparing to file his application for adjustment of status and accompanying application for employment authorization. But Fr. Jordan's R-1 status will expire on December 4, 2021, and if USCIS does not approve Fr. Jordan's application for employment authorization by this date, SVD will have to place him on leave or risk employer sanctions.

e. Fr. Messan Tettekpoe, a citizen of Togo. SVD filed his I-360 petition on September 24, 2021, Receipt # WAC 2190140088, but his R-1 status will expire in less than a year on September 1, 2022. USCIS approved his I-360 after the amended complaint in this case was filed. But he is not entitled to further extensions of his R-1 status and he does not yet have an approved employment authorization card based on a pending application for adjustment of status. So if USCIS does not approve his employment authorization by September 1, 2022, the SVD will have to put him on leave or face employer sanctions, further disrupting SVD's religious mission.

36. The Society of the Divine Word expects and intends to continue filing I-360 petitions for its ministers whom it decides should continue to minister in the United States.

**Relevant Facts Relating to Plaintiff National Spiritual Assembly of the Baha'is in the United States**

37. Plaintiff the National Spiritual Assembly seeks to permanently employ Ms. Saphira Rameshfar, a citizen of Australia, as a Representative to the United Nations with its

Baha'i International Community in New York City. It filed a form I-360 for her on December 4, 2019, which USCIS approved on January 8, 2021, only days before her R-1 status would expire, and only after the National Spiritual Assembly informed USCIS that it would bring suit to compel adjudication of the petition. Because Ms. Rameshfar's R-1 status expired in January 2021, she was then unable to be employed in the United States until USCIS granted her an employment authorization document. She applied for that document on January 19, 2021, Receipt # LIN 2190161648, when she also filed an adjustment of status application or Form I-485, Receipt # LIN 2190161647, and a request for permission to travel on an advance parole, Receipt # LIN 2190161649. Defendants approved her requests for employment and travel authorization after the original complaint in this case was filed. But in the meantime, she had to remain off the payroll and the National Spiritual Assembly was unable to use her services for over six months. She was also unable to visit her sick mother in Australia during this time. USCIS has still not approved her application for adjustment of status to provide the National Spiritual Assembly with long-term assurance that it can retain her services without future disruptions, including having to file extensions of her employment authorization and advance parole travel documents.

38. If Ms. Rameshfar and the National Spiritual Assembly had been able to concurrently file the I-360 and I-485 applications, they would not have experienced the disruption of their religious missions nor the impositions presently placed on Ms. Rameshfar's personal liberty.

39. The National Spiritual Assembly has previously brought religious workers to the United States in R-1 visa status to serve as representatives to the U.N. and it continues to do so. In appropriate cases, it will file other I-360 petitions in the future.

### Relevant Facts Relating to Plaintiff Illinois Great Rivers Conference of the United Methodist Church

40. Plaintiff, Illinois Great Rivers Conference of the United Methodist Church seeks to employ Rev. Enrico Retotar Esguerra, a citizen of the Philippines, permanently as a pastor within the Conference. Since December 2018 Rev. Esguerra has served in a joint appointment as Pastor of the Goreville United Methodist Church in Goreville, Illinois, and the Creal Springs United Methodist Church in Creal Springs, Illinois, in non-immigrant R-1 status. Previously, from 1995 through November 2018, Rev. Esguerra served in various appointed pastoral positions in the Philippines Annual Conference of the United Methodist Church.

41. On December 9, 2019 the IGRC-UMC filed an I-360 immigrant petition on behalf of Rev. Esguerra and that petition remains pending, Receipt # WAC 2090037566. When Rev. Esguerra traveled to the United States in December 2018, his family members, including his wife and three children, traveled with him and were admitted in R-2 status as Rev. Esguerra's dependents. Included in those dependent family members is Rev. Esguerra's son, Henrick August Esguerra, born November 7, 1999. If Rev. Esguerra had been permitted to file concurrent I-485 applications for adjustment of status for himself and his R-2 family members, with the Conference's I-360 petition the family would have been granted employment authorization documents, and Henrick Esguerra's future with his parents and siblings in the United States would have been secure.

42. When Rev. Esguerra's son, Henrick, had his twenty first birthday on November 7, 2020, he lost his eligibility for R-2 status. Because he was not eligible to apply for adjustment of status, on September 9, 2020, Henrick filed a Form I-539 application for a change of status to student status, to allow him to continue his education and to remain with his family in Illinois, Receipt # SRC 20 904 61355. That application has not been adjudicated. USCIS has now issued Requests for Evidence on both Rev. Esguerra's I-360 and his son, Henrick's I-539. The failure of the defendants to adjudicate the I-360 within a reasonable time, combined with the USCIS's regulations prohibiting concurrent filing of adjustment of status applications for beneficiaries of I-360 immigrant visa petitions and the additional failure of the USCIS to adjudicate Henrick's I-539 application, places the stability and unity of Rev. Esguerra's immediate family in jeopardy. The unstable and precarious situation of Rev. Esguerra's family places his continued service as a pastor at the Goreville and Creal Springs United Methodist Churches at risk and harms the Conference in its ongoing efforts to provide pastoral care to those communities.

**Relevant Facts Relating to Plaintiff Pontifical Institute for Foreign Missions**

43. Pontifical Institute for Foreign Missions filed a Form I-360, Receipt # WAC 2190073027, for Fr. Daniele Criscione, a citizen of Italy, so that Fr. Criscione may serve at PIME's U.S. Mission Center in Detroit, Michigan. It filed this petition on April 7, 2021, and the petition is still pending.

44. Fr. Criscione's R-1 status expires July 31, 2022 and he will reach the five-year maximum of his R-1 status on October 3, 2022.

45. If Fr. Criscione experiences a lapse in his employment authorization due to USCIS's delay in processing his I-360, PIME will have to incur additional costs to seek yet another extension of his R-1 status through early October.

46. If this additional extension is not sufficient to avoid a gap in Fr. Criscione's employment authorization, then PIME may need to reassign him to a location abroad causing disruption to the community he serves and additional expense to PIME.

**Relevant Facts Relating to Plaintiff Brown Missionary Baptist Church**

47. Brown Missionary Baptist Church filed a Form I-360 for Pastor Jaime Armando Loayza Rojas; his wife, Serenith; and his children, Esteban, Samuel, and Josue, all citizens of Peru, so that he may serve as their Pastor of Hispanic Ministries. Receipt # WAC 2190041675. It filed this petition nine months ago, on January 11, 2021, and the petition is still pending.

48. Brown Missionary Baptist Church requested an expedite of this I-360 petition, and USCIS denied this request on September 28, 2021. That same day, the Church asked for Congressional assistance.

49. Pastor Loayza Rojas will reach the end of his five years of R-1 status on October 27, 2021.

50. Pastor Loayza Rojas is in the middle of establishing a satellite "daughter" church for the Brown Missionary Baptist Church that focuses on serving the Spanish-speaking immigrant community. This ministry is only a few months old. So if Pastor Loayza Rojas has to stop working and/or leave the United States due to USCIS's delay in processing his I-360 this new ministry will not survive, as it is still in an early and fragile

state, and the Church's outreach efforts in the Hispanic community will lose significant momentum.

**Relevant Facts Relating to Plaintiff India Heritage Foundation, NJ/NY Inc.**

51. Plaintiff India Heritage Foundation, NJ/NY Inc. filed I-360s for two Hindu priests on April 20, 2020, nearly 18 months ago, as described below:

    a. It filed a petition for Harsh Vardhan Sharma. Receipt # WAC 2090100422. USCIS approved this petition after the amended complaint in this case was filed but Mr. Sharma reached the maximum period of his R-1 stay on October 5, 2021 and India Heritage Foundation had to take him off the payroll because he does not yet have employment authorization based on a pending application for adjustment of status.

    b. It filed a petition for Satyabrata Jena. Receipt # WAC 2090100423. USCIS approved this petition after the amended complaint in this case was filed. But Mr. Jena will reach his maximum period of R-1 stay on December 21, 2021. As he does not yet have an approved employment authorization based on a pending application for adjustment of status, India Heritage Foundation will also have to take him off the payroll after December 21, 2021 or risk employer sanctions.

52. Because it cannot obtain continuing employment authorization for these two priests due to USCIS's delay in processing these I-360s, the India Heritage Foundation will not have sufficient priests to serve at its temples, causing disruption to its religious exercise and ability to provide religious services to its adherents.

**Relevant Facts Relating to Baptist Mid-Missions**

53. Baptist Mid-Missions filed an I-360 petition for Jean Tsen, a citizen of Malaysia, on May 1, 2020, 17 months ago, Receipt # WAC2090107006, so that Ms. Tsen may serve as a missionary with Baptist Mid-Missions at a church-planting project in Boston, Massachusetts.  This petition is still pending.

54. Baptist Mid-Missions sought Congressional assistance from Senator Tina Smith with no result.

55. Ms. Tsen reached her maximum period of R-1 stay on October 27, 2020.  As a result, she had to leave the United States, and Baptist Mid-Missions had to reassign her to a project in the United Kingdom.

56. Due to USCIS's delay in processing this I-360, Baptist Mid-Missions's religious activities have been disrupted.  Because Ms. Tsen had to leave the United States, the Boston church-planting project that she was involved in has missed her services as a counselor, church ministry leader, and outreach coordinator.  The lead church planter has had to take on many of her duties, which has been a burden to him and has resulted in the project being able to serve fewer people.  In addition, Baptist Mid-Missions has had to divert resources to pursuing unsuccessful requests to expedite adjudication of the I-360.

**Relevant Facts Relating to General Secretariat of the Franciscan Missions, Inc.**

57. The Franciscans filed an I-360 petition for Fr. Devassy Joy Kuruthukulallgara, O.F.M., a citizen of India, on December 8, 2020, Receipt # WAC 2190023765, so that he may continue to serve as a business manager to the Secretariat pursuant to his religious vocation as a vowed member of the Franciscan order and an ordained Roman Catholic priest.

58. USCIS approved this petition after the amended complaint in this case was filed.  But he does not yet have employment authorization based on a pending application for adjustment of status and he will reach his maximum period of R-1 stay on January 20, 2022.  If USCIS does not approve employment authorization for him by then, the Franciscans will have to place him on inactive status or risk employer sanctions.  This will greatly disrupt the Franciscans' religious activities because the COVID-19 pandemic limits their ability to reassign members of the order who are in the middle of assignments, and the Franciscans' General Curia in Rome would be unable to appoint another member of the order to replace Fr. Kurthukukallgara.

**Relevant Facts Relating to Plaintiff The Roman Catholic Diocese of Des Moines**

59. The Roman Catholic Diocese of Des Moines filed an I-360 petition Fr. Samuel Kwame Danso, a citizen of Ghana, on February 2, 2021, so that he may continue serving as a priest in the Diocese.  Receipt # WAC 2190045742.

60. USCIS approved this petition after the amended complaint in this case was filed.  But Fr. Danso will reach his maximum period of R-1 stay on November 14, 2023 and does not yet have an approved employment authorization based on a pending application for adjustment of status.  If Fr. Danso does not receive employment authorization by November 14, 2023, the Diocese will have to put him on inactive status or face employer sanctions.

61. The Diocese brought Fr. Danso to the United States to serve three small parishes in rural Iowa because the Diocese could not find another priest to serve at these parishes.  If he cannot continue his work at these parishes, they will be without a regular priest to serve as their spiritual leader and guide.

**Relevant Facts Relating to Plaintiff First Baptist Church of Kalamazoo**

62. First Baptist Church of Kalamazoo filed an I-360 petition for Rev. Dr. Sanchita Kisku, a citizen of India, so that she may serve as an Associate Pastor for Pastoral Care and Outreach at the Church. First Baptist filed this petition on September 8, 2020. Receipt # WAC 2090165993.

63. USCIS approved this petition after the amended complaint in this case was filed. But Rev. Dr. Kisku's R-1 status will expire on February 10, 2022 and she will reach her five-year maximum period of stay on August 10, 2022. As she does not yet have employment authorization based on a pending application for adjustment of status, she may have to stop working because of USCIS's delay in adjudicating her I-360 or the Church may face employer sanctions.

64. If the Church loses her services as a pastor, it may be unable to replace her due to resource constraints. This will prevent it from providing religious services to its members.

**Relevant Facts Relating to Grace-Trinity United Church of Christ**

65. Grace-Trinity United Church of Christ filed an I-360 for Jonathan Bangera; his wife, Sharon; and his children, Joshua and Jesse, citizens of India, on March 16, 2020, over 18 months ago, so that he may continue serving the Church as an associate pastor. This petition is still pending. Receipt # WAC 2090081569.

66. Pastor Bangera will reach his maximum period of R-1 stay on May 12, 2022. If Pastor Bangera must leave the United States or stop working because of USCIS's delay in adjudicating his I-360, the Church will face disruption to its ministry.

**Relevant Facts Relating to Birmingham Chinese Christian Church**

67. Plaintiff BCCC filed an I-360 petition for its sole pastor, Xuefeng Wu, a citizen of China, on April 20, 2021. Receipt # WAC2190076880. This petition is still pending. Pastor Wu last arrived in the U.S. on January 24, 2020 in R-1 visa status that is valid until June 1, 2022. Pastor Wu's wife, Shuying Rao, and their 18 year old son, Tianli Wu, also citizens of China, have both applied to change their status to dependent R-2 status and those applications remain pending too. Receipt ## WAC 2190074778 and WAC 2190072147.

68. Because the regulations prohibit the BCCC from concurrent filing and premium processing, and given the USCIS's extensive processing time of some two years for I-360 petitions, it will need to incur expenses and inconvenience to extend Pastor Wu's and his family members' nonimmigrant status that it would not need to if it were not a religious organization.

69. The BCCC expects and intends to continue filing I-360 petitions for ministers in the future whom it decides should come or continue to minister for it in the United States.

**Relevant Facts Relating to Diocese of Peoria**

70. Plaintiff Diocese of Peoria filed an I-360 petition for one of its priests, Fr. John Mujuni, a citizen of Uganda, on January 28, 2021. Receipt # WAC 2190038998. This petition is still pending.

71. Fr. Mujuni's R-1 status is currently valid to December 14, 2021 and he will reach his maximum period of stay in R-1 status on December 15, 2021, so he is not eligible for any significant further extension.

72. Due to USCIS's delay in adjudicating Fr. Mujuni's I-360, the Diocese is facing the difficult choice of having to place Fr. Mujuni on leave from his duties and/or have him leave the United States or face employer sanctions.

73. The Diocese of Peoria expects and intends to continue filing I-360 petitions for priests in the future whom it decides should come or continue to minister for it in the United States.

**Relevant Facts Relating to Missionary Sisters Servants of the Holy Spirit**

74. The SSpS has filed I-360s for three of its members.

    a. It filed an I-360 on July 13, 2020, over 15 months ago, for a sister who will reach her maximum period of R-1 stay on December 14, 2022. Receipt # WAC2090141034. This petition is still pending. If this petition is not approved by December 14, 2022, it will prevent this sister from continuing her service in the United States and her current religious mission will suffer due to lack of sufficient women religious in the United States and the order's possible inability to find a replacement.

    b. It filed an I-360 on March 6, 2020, over 20 months ago for a sister who will reach her maximum period of stay on January 1, 2022. Receipt # WAC2090077379. This petition is still pending. If this petition is not approved by January 1, 2022, it will prevent this sister from continuing her religious service at the Holy Spirit Life Learning Center, which fosters social and cultural interest in the Rogers Park neighborhood of Chicago. This sister has also been unable to visit her sick mother abroad due to the delay in processing of her I-360 and her resulting inability to apply for and receive an advance parole travel document.

    c. It filed an I-360 on March 23, 2020, over 19 months ago for a sister who reached her maximum period of stay on July 16, 2021. Receipt # WAC2090084629. This petition is still pending. Because of USCIS's delay in adjudicating this petition, the SSpS had to incur additional expense to file a change of status for this sister to

H-1B so she could continue her service with the order and had to spend money on this process that would otherwise have been used to serve people in need.

75. SSpS expects to file additional I-360 petitions for its religious sisters in the future.

## V. Causes of Action

### Count 1. First Amendment Free Exercise Clause Claims

76. 8 C.F.R. 245.2(a)(2)(i)(B) is not a neutral rule of general application. It expressly distinguishes between non-religious and religious employers, and withholds the benefit of concurrent filing of visa petitions and adjustment of status applications only from religious employers. Thus, the policy is subject to strict scrutiny and must end.

77. The USCIS's application of 8 U.S.C. § 1356(u) is also not neutral. It allows certain employers to avoid the adverse impacts of USCIS processing delays while not allowing religious employers to do the same.

78. Because USCIS does not provide methods for religious employers to access its premium processing service, nor concurrently process their applications for ministers and religious workers, USCIS's policies violate the First Amendment of the United States Constitution's Free Exercise Clause.

### Count 2. First Amendment Establishment Clause Claims

79. Neither the Immigration and Nationality Act nor defendants' regulations, practices or policies are neutral rules of general application. Together with unreasonable delays, they directly result in chilling or interfering with the plaintiffs' rights to select and employ ministers of religion within their respective denominations. Forcing the plaintiffs to dismiss ministers owing to onerous procedural obstacles and unreasonable practices and delays violates the United States Constitution's Establishment of Religion Clause.

**Count 3. Religious Freedom Restoration Act Violations**

80. Defendants' regulations and policies place a substantial burden on the plaintiffs' religious exercise in violation of RFRA. Combined with USCIS's current processing times exceeding two years, they ensure that religious employers like plaintiffs will lose the services of their chosen religious ministers and workers. The withholding of benefits provided to other employers such as concurrent filing and premium processing places a substantial burden on the plaintiffs' religious exercise and does not serve a compelling government interest, nor is this the least restrictive means of carrying out the policies of the immigration laws.

**Count 4. Immigration and Nationality Act Claims**

81. 8 C.F.R. 245.2(a)(2)(i)(B) violates the Immigration and Nationality Act, 8 U.S.C. § 1255(a), by creating separate standards and limiting who may apply for adjustment of status based on whether the underlying visa petition is from a non-religious employer or a religious employer. The statute contains no such distinction. If the statute allows for concurrent filing for one class of employers, it must do so for religious employers as well. *See also,* 8 C.F.R. §245.1(g)(1) ("A preference immigrant visa is considered available for accepting or processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current).").

82. Defendants' processing delays, much more severe for religious-based I-360 petitions than for other employment-based visa petitions, violate 8 U.S.C. § 1255(k), which is intended to protect employment-based immigrants and employers by preventing USCIS's processing delays from impeding their ability to adjust their status.

## Count 5. Administrative Procedure Act Claims

83. The discriminatory filing regulation at 8 C.F.R. § 245.2(a)(2)(i)(B) violates § 1255(a)'s requirement that one may apply to adjust status when a visa is available, by improperly considering EB-1, 2, and 3 preference categories as having a visa available at the time of filing the petition while only treating it as available for religious employers when the USCIS approves their petition. The USCIS's interpretation of who is eligible to apply for adjustment of status is arbitrary, capricious, and not substantially supported by law, and the Court may vacate the policy and its effects. 5 U.S.C. §§ 704-706.

84. USCIS's refusal to extend premium processing to immigrant visa petitions for religious workers when it extends them to all other employment-based petitions is arbitrary and capricious.

85. This Court, under the Administrative Procedure Act, may also order defendants to act on pending petitions and applications for immigration benefits that are unreasonably delayed. The defendants' processing times are not "normal" and create unreasonable delays, particularly when the delay interrupts the ability of the plaintiffs to exercise their religion through their chosen ministers and religious workers.

## Count 6. Due Process and Equal Protection Claims

86. USCIS's processing delays far exceed Congress's expectation that petitions and applications for employment-based immigration benefits may be filed when a visa is available, and should be adjudicated within a normal period of 180 days. The current delays of 2 or more years are abnormal and frustrate these legislative priorities, depriving U.S.-based religious organizations of the ability to retain religious ministers and workers, while favoring secular employers, violating both due process and equal protection.

**Mandamus and APA Claims for Plaintiff Illinois Great Rivers
Conference of the United Methodist Church**

87. The defendants' delays in adjudicating IGRC-UMC's I-360 for Rev. Enrico Esguerra,

and the I-539 application for student status for Henrick August Esguerra are unreasonable

under the Mandamus Act and the APA, and threaten Rev. Esguerra's religious ministry in

the United States and the unity of his immediate family.

**Mandamus and APA Claims for Plaintiff Pontifical Institute for Religious Missions**

88. The defendants' delay in adjudicating PIME's I-360 petition for Fr. Criscione is

unreasonable under the Mandamus Act and the APA and threatens his religious ministry

in the United States.

**Mandamus and APA Claims for Plaintiff Brown Missionary Baptist Church**

89. The defendants' delay in adjudicating Brown Missionary Baptist Church's I-360 petition

for Pastor Loayza Rojas and his derivative family members is unreasonable under the

Mandamus Act and the APA and threatens his religious ministry in the United States.

**Mandamus and APA Claims for Plaintiff Baptist Mid-Missions**

90. The defendants' delay in adjudicating the Baptist Mid-Missions' I-360 for Ms. Tsen is

unreasonable under the Mandamus Act and the APA and threatens her religious ministry

in the United States.

**Mandamus and APA Claims for Plaintiff Grace-Trinity United Church of Christ**

91. The defendants' delay in adjudicating Grace-Trinity United Church of Christ's I-360 for

Pastor Bangera and his derivative family members is unreasonable under the Mandamus

Act and APA and threatens his religious ministry in the United States.

**Mandamus and APA Claims for Plaintiff Birmingham Chinese Christian Church**

92. The defendants' delay in adjudicating the I-360 for Mr. Wu and the R-2 change of status applications for his family members is unreasonable under the Mandamus Act and the APA and threatens his religious ministry in the United States.

**Mandamus and APA Claims for Plaintiff Diocese of Peoria, Illinois**

93. The defendants' delay in adjudicating the I-360 for Fr. Mujuni is unreasonable under the Mandamus Act and the APA and threatens his religious ministry in the United States.

**Mandamus and APA Claims for Plaintiff Missionary Sisters Servants of the Holy Spirit**

94. The defendants' delays in adjudicating the I-360s for SSpS's religious sisters are unreasonable under the Mandamus Act and the APA and threaten the sisters' religious ministry in the United States.

## VI.     Relief Sought

WHEREFORE, based on all of the foregoing, plaintiffs respectfully request this Court to:

1. Declare 8 C.F.R. 245.2(a)(2)(i)(B) to violate the U.S. Constitution's First Amendment, Fifth Amendment, Religious Freedom Restoration Act, Immigration and Nationality Act, and Administrative Procedure Act;

2. Order defendants to accept concurrent filing of Forms I-360 and I-485 for any applicant for whom an immigrant visa is available.  8 U.S.C. § 1255(a);

3. Order defendants to immediately adjudicate any forms I-360 and related forms that have been pending for at least 180 days;

4. Order defendants to extend premium processing to religious petitioners of I-360 petitions;

5. Enjoin defendants from considering the plaintiffs' I-360 beneficiaries, including derivative beneficiaries of the I-360s, as being unlawfully present in the United States, or

accruing a period of unlawful presence, or being in violation of their nonimmigrant

status, or being without employment authorization, while this lawsuit is pending.

Respectfully submitted,

_s/Scott D. Pollock_____
Attorney for the Plaintiffs

Scott D. Pollock
Christina J. Murdoch
Scott D. Pollock and Associates, P.C.
105 W. Madison, Suite 2200
Chicago, Illinois 60602
Tel. (312) 444-1940
Fax (312) 444-1950
spollock@lawfirm1.com

Charles H. Wintersteen
Wintersteen Law Group
53 W. Jackson Blvd, Suite 809
Chicago, Illinois 60604
Tel. (312) 566-0301
Fax (312) 588-0437
chw@charleswintersteen.com

## CERTIFICATE OF SERVICE

Scott D. Pollock, an attorney hereby certifies that the foregoing Plaintiffs' Second Amended Complaint was served on November 22, 2021 on counsel of record for the Defendants, in accordance with FED R. CIV. PRO. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) system as to ECF filers on:

Craig A. Oswald
Elizabeth Treacy
U.S. Attorney's Office
Northern District of Illinois, Eastern Division
219 S. Dearborn St., Fifth Floor
Chicago, IL 60604

Aaron S. Goldsmith
Office of Immigration Litigation
U.S. Department of Justice
Liberty Square Building
450 5th St., N.W.
Washington, D.C. 20530-0001

__s/Scott D. Pollock_____
Scott D. Pollock
Attorney for the Plaintiff
Scott D. Pollock & Associates, P.C.
105 W. Madison, Suite 2200
Chicago, IL  60602
(312) 444-1940