IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOCIETY OF THE DIVINE WORD, Chicago Province; NATIONAL SPIRITUAL ASSEMBLY OF THE BAHA'IS IN THE UNITED STATES; ILLINOIS GREAT RIVERS CONFERENCE OF THE UNITED METHODIST CHURCH; PONTIFICAL NSTITUTE FOR FOREIGN MISSIONS; BROWN MISSIONARY BAPTIST CHURCH; INDIA HERITAGE FOUNDATION, NJ/NY INC.; BAPTIST MID-MISSIONS; GENERAL SECRETARIAT OF THE FRANCSICAN MISSIONS, INC.; THE ROMAN CATHOLIC DIOCESE OF DES MOINES; FIRST BAPTIST CHURCH OF KALAMAZOO; GRACE-TRINITY UNITED CHURCH OF CHRIST; BIRMINGHAM CHINESE CHRISTIAN CHURCH; DIOCESE OF PEORIA, ILLINOIS; MISSIONARY SISTERS SERVANTS OF THE HOLY SPIRIT; ALGOOD BAPTIST CHURCH, D/B/A CHURCH ON A HILL; EVANGELICAL LUTHERAN CHURCH OF AMERICA (ELCA), INDIANA-KENTUCKY SYNOD; & EVANGELICAL LUTHERAN CHURCH OF AMERICA (ELCA), NEW JERSEY SYNOD, <br><br>        Plaintiffs, <br><br>  v. <br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security; and DONNA P. CAMPAGNOLO, Director, USCIS California Service Center (CSC), <br><br>        Defendants. | Case No. 21 CV 3650 <br><br> Judge Robert W. Gettleman |

**MEMORANDUM OPINION & ORDER**

Plaintiffs are tax-exempt religious institutions and bring this six-count complaint against

1

defendants United States Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, Secretary of the Department of Homeland Security; and Donna P. Campagnolo, Director of the USCIS California Service Center ("CSC") (collectively, "defendants"). The complaint alleges that defendants' regulations, policies, and practices violate the U.S. Constitution and various federal statutes. Count 1 alleges violations of the Free Exercise Clause of the First Amendment; Count 2 alleges violations of the Establishment Clause of the First Amendment; Count 3 alleges violations of the Religious Freedom Restoration Act ("RFRA"), 28 U.S.C. § 2201; Count 4 alleges violations of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255; Count 5 alleges violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; and Count 6 alleges violations of the Due Process and Equal Protection Clauses. The instant complaint is plaintiffs' third amended complaint (Doc. 39), which they filed on July 1, 2022. On July 27, 2022, defendants moved the court to dismiss plaintiffs' third amended complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Doc. 41). On November 18, 2022, defendant USCIS filed a Notice of Administrative Development (Doc. 52), which prompted the court to direct plaintiffs to respond regarding whether the instant case is moot (Doc. 53). Plaintiffs responded on November 28, 2022 (Doc. 54). For the reasons discussed below, defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiffs allege that they "exercise their religious beliefs and advance them in practice by employing foreign-born ministers and international religious workers." The INA allows up to 5,000 visas per fiscal year for such workers, but the process of employing foreign-born ministers and international religious workers under the INA is complicated. Some of these visa applicants are already in the United States on a non-immigrant ("R-1") visa. R-1 visa holders can stay in

the country for up to five years, and they can stay longer if they successfully "adjust status" prior to their R-1 visa expiration. If an R-1 visa holder does not adjust their status before its expiration, the individual is unlawfully present in the United States and becomes ineligible to adjust status. 8 U.S.C. §§ 1255(c), (k).

Ministers and other religious workers can seek classification in employment-based immigrant preference categories for "special immigrants." 8 U.S.C. § 1154(a)(1)(G)(i). What plaintiffs term the "special immigrant religious worker" category is known as "EB-4." 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C). Other employment-based immigrant preference categories include priority workers ("EB-1"), advanced degree and exceptional ability workers ("EB-2"), professional and skilled workers ("EB-3"), and individuals involved in job creation ("EB-5"). 8 U.S.C. §§ 1153(b)(1),(2),(3), and (5).

EB-4 classification requires a series of steps by both employers and non-citizen employees. Employers seek EB-4 classification for their non-citizen employees by filing a Form I-360 petition with the Secretary of Homeland Security. 8 C.F.R. § 204.5(a). After USCIS approves the Form I-360 petition, the indicated non-citizen employee must file a Form I-485 application for adjustment of their status to "lawful permanent resident," otherwise known as a "green card holder." 8 C.F.R. § 245.2. For USCIS to adjust an applicant's status, the applicant must be eligible to receive an employment-based preference visa, and such visa must be immediately available. 8 U.S.C. § 1255(a). In the instant case, plaintiffs are employers who have filed Form I-360 petitions on behalf of certain non-citizen employees with R-1 status. Plaintiffs' specified non-citizen employees (i.e., the beneficiaries specified on plaintiffs' Form I-360 petitions) are not parties to the instant case.

Employment-based immigrants in other preference categories must complete different

steps to adjust their status. For example, employers of non-citizen workers in the EB-1, EB-2, and EB-3 preference categories must file Form I-140 Petitions instead of Form I-360 Petitions. 8 C.F.R. § 204.5(a). In addition, according to defendants, these employers must "test the U.S. labor market" by first seeking a labor certification from the United States Department of Labor. 8 U.S.C. § 1182(a)(5)(A)(i). Employees in these preference categories file Form I-485 applications for status adjustment, just like EB-4 employees. 8 C.F.R. § 245.2(a)(3). The difference is that other categories of special immigrant workers (i.e., EB-1, EB-2, EB-3 employees) can file their Form I-485 applications concurrently with their Form I-140 petitions, whereas EB-4 employees can only file their Form I-485 applications after the USCIS approves their employers' Form I-360 petitions. 8 C.F.R. § 245.2(a)(2)(i)(B).

 Plaintiffs complain that the inability to concurrently file Form I-485 applications with Form I-360 petitions results in processing delays. Because their employees' R-1 statuses are time-limited, plaintiffs allege that "the ability to timely file an I-485 adjustment of status application can be important to avoid interrupting religious workers' employment in the United States." According to plaintiffs, applicants are eligible to receive employment authorization based on their pending Form I-485 applications. Plaintiffs complain that USCIS's backlog in processing for Form I-360 petitions—which USCIS must approve before employees can file their corresponding Form I-485 applications—has "steadily grown" over the past several years. They cite defendants' website to suggest that the processing time delay for Form I-360 petitions was five to seven months on March 3, 2020, but has since increased to 20.5 to 27 months as of October 3, 2021.

 Plaintiffs acknowledge that Congress has acted to help alleviate the burden of processing delays. Congress determined that "[i]t is the sense of Congress that the processing of an

immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Further, Congress authorized the Department of Homeland Security to "establish and collect a premium fee" for premium processing. 8 U.S.C. § 1356(u). The problem for EB-4 petitioners is that, according to plaintiff, "USCIS permits many I-140 petitioners to obtain premium processing adjudications, but not I-360 religious petitioners." Plaintiffs allege that "[e]xtending concurrent filing and premium processing to Forms I-360, which defendants do for non-religious employers, would alleviate the burdens that the ballooning delays impose on religious employers, by providing their religious workers with employment authorization, travel authorization, and protection from the consequences of being unlawfully present in the United States, while their adjustment of status applications are being processed."

Ultimately, plaintiffs allege that defendants' regulations, policies, and practices "discriminate against U.S.-based religious employers and their selected international religious workers, while interfering with their [constitutional and statutory] rights to appoint and employ ministers." In their third amended complaint, plaintiffs complain that because USCIS excludes them "and all religious organizations that file I-360 petitions" from concurrent filing and premium processing, plaintiffs "may" need to dismiss ministers or put R-1 religious workers on temporary leave, which results in additional delays, cost, and diverted resources. They complain about delay and expense because they "may" need to file expedited action or R-1 extensions, in addition to congressional assistance. They allege that they are harmed from "potential liability" following violations of defendants' policies, and they opine that defendants' regulations, policies, and practices "may" impact their employment decisions in the future. Last, plaintiffs allege harm to their non-citizen employees' children, who they claim "may" be impacted by

5

processing delays.

For their various harms, plaintiffs seek various forms of relief, including declaratory and injunctive relief. They urge the court to declare 8 C.F.R. 245.2(a)(2)(i)(B) unconstitutional under the First and Fifth Amendments, as well as declare that the regulation violates the RFRA, INA, and APA. They urge the court to order defendants to immediately adjudicate plaintiffs' Form I-360 and related forms that have been pending for at least 180 days, in addition to ordering defendants to accept concurrent filings for any applicants "for whom an immigrant visa is available," as well as to extend premium processing to religious petitioners of Form I-360 petitions. Last, they seek an injunction from considering plaintiffs' Form I-360 beneficiaries as unlawfully present, among other things, while the lawsuit is pending.

Defendants counter that the court does not have jurisdiction over plaintiffs' complaint. They argue that plaintiffs "have not, and cannot, point to any adverse agency action that USCIS has purportedly taken" because plaintiffs concede that USCIS has approved all plaintiffs' Form I-360 petitions that are specified in the third amended complaint. Moreover, in defendants' Notice of Administrative Action, defendant informed the court that USCIS also approved all specified Form I-485 applications. In other words, the USCIS cannot find any beneficiaries (i.e., employees) indicated in plaintiffs' third amended complaint to be unlawfully present.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff must show that the court has jurisdiction. Fed. R. Civ. Pro. 12(b)(1). Federal courts have limited jurisdiction and may exercise jurisdiction only where it is specifically authorized by federal statute, Evers v. Astrue, 536 F.3d 651, 657 (7th Cir. 2008), and where it is consistent with the U.S. Constitution. Article III of the U.S. Constitution confines federal courts to resolution of "cases" or "controversies."

U.S. Const. art. III.

As a threshold matter, Article III requires that a plaintiff establish standing. To have standing, a plaintiff must have suffered an injury in fact that is traceable to the defendant's challenged conduct and redressable by a favorable decision from the court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). An injury in fact is an invasion of a legally protected interest that is concrete and particularized and actual or imminent. Id. at 560. An interest is not particularized if it is shared generally with the public at large, such as an interest in the proper application of the Constitution and the law. Id. at 573–74.

Cases that do not involve actual, ongoing cases or controversies are moot and must be dismissed for lack of jurisdiction. See Stotts v. Cmty. Unit Sch. Dist. No. 1, 230 F.3d 989, 990–91 (7th Cir. 2000). The Supreme Court has described mootness as "the doctrine of standing set in a time frame." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22 (1997). Unlike the burden to prove standing, which lies with the plaintiff, the burden to prove mootness lies with the party asserting mootness, which is usually the defendant. See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). A case becomes moot when the court's decision would no longer affect the rights of litigants in the case before them and "simply would be an opinion advising what the law would be upon a hypothetical state of facts." H.P. by & Through W.P. v. Naperville Cmty. Unit Sch. Dist. #203, 910 F.3d 957, 960 (7th Cir. 2018) (internal quotations omitted).

## **DISCUSSION**

Defendants move to dismiss plaintiffs' third amended complaint for lack of jurisdiction. First, they argue that plaintiffs lack standing and that the case is moot. Next, defendants argue that plaintiffs' challenge to 8 C.F.R. § 245.2(a)(2)(i)(B), which regulates concurrent filing, is

7

barred by the relevant statute of limitations. Last, defendants argue that plaintiff's challenge to USCIS's implementation of 8 U.S.C. § 1356(u)(2)(E), which governs premium processing, is barred by statute. The court concludes that the case is not moot and that plaintiff has standing, but the court dismisses plaintiffs' third amended complaint for lack of jurisdiction in part.

The court begins with defendants' argument that plaintiffs lack standing and that the case is moot. This argument can be parsed into three components: (1) plaintiffs cannot establish a redressable injury; (2) even if plaintiffs have hypothetically redressable injuries, their injuries are moot because plaintiffs cannot show that they are likely to recur; and (3) plaintiffs cannot establish causation.

First, defendants argue that the case is moot because USCIS has already approved all Form I-360 petitions and their corresponding Form I-485 applications at issue in the litigation. According to defendants, the court is unable to grant any relief that would redress plaintiffs' harms, since plaintiffs no longer feel "uncertainty as to when the petitions would be approved." Further, to the extent that plaintiffs "seek structural changes to the rules governing the future filing of Form I-360 petitions for Special Immigrant Religious Workers," defendants argue that such relief "necessarily cannot redress the harms Plaintiffs allege that they have suffered in connection with previous filings." The court agrees with defendant that plaintiffs cannot establish standing based on their approved petitions for EB-4 status.[1]

The case is not moot, however, if plaintiffs allege an injury in fact that is likely to recur. See, e.g., Fed. Election Comm'n v. Wisconsin Right To Life, Inc., 551 U.S. 449, 462–63 (2007); see also United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968) ("A

---

[1] The court also rejects other alleged harms as inappropriate to establish standing. The court rejects any alleged harm on behalf of other "religious organizations that file I-360 petitions, as well as alleged harm on behalf of the indicated beneficiaries' children, because such harms are not particularized to plaintiffs, and courts generally reject third-party standing.

case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."). Plaintiffs argue that they continue to suffer due to defendants' allegedly unlawful refusal to extend concurrent filing and premium processing to EB-4 petitioners, which has "ensured that they face ongoing delays" and will do so in future petitions, which plaintiffs indicate that they intend to file. Plaintiffs also argue that any recent reduction in processing times does not mean that defendants can moot the case through their own voluntary conduct, citing Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000), because it is not "absolutely clear" that delays in adjudication will not recur following resolution of the instant suit.

Defendants argue against both exceptions to mootness because "[t]here is no reason to believe that there will be another pandemic that will cause USCIS's processing times to balloon," and that "USCIS is moving to make changes to the rules governing the filing of Form I-360 petitions for Special Immigrant Religious Workers" through notice-and-comment rulemaking. The court determines that the instant case is not moot based on these arguments, which rely upon possible, but not certain, events that are partially within USCIS's control. See, e.g., Chi. United Indus., Ltd. v. City of Chi., 445 F.3d 940, 947 (7th Cir. 2006) ("[T]he mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day.")

Although the court concludes that the case is not moot, the court must still dismiss plaintiffs' third amended complaint if it determines that plaintiffs cannot establish standing without pending petitions. Plaintiffs maintain that "[t]his case was never fundamentally about the Defendants' unreasonable delays," but is about "religious organizations' right to participate on an equal basis in Government programs that benefit non-religious organizations." Essentially,

9

plaintiffs' argument is that their true injury is disparate and discriminatory treatment in the employment-based status adjustment process—which has manifested in processing delays and expense above and beyond those organizations seeking other employment-based immigrant visas. In response to defendants' motion to dismiss, plaintiffs attach affidavits that indicate that "USCIS processing times for I-360 petitions for religious workers slipped to an extraordinary level of more than two years, while its processing time for most secular employers did not slip as much (and premium processing was available for urgent cases)," and that religious organizations are required to "expend resources to complete the religious immigration procedure in ways that non-religious organizations and their employees do not."

The court concludes that, even without pending petitions, plaintiffs can establish standing in federal court based on their allegations of disparate and discriminatory treatment in the process of filing EB-4 motions, and their alleged harm is redressable. The court could remedy plaintiffs' expense burden through a court order to expand concurrent filing and premium processing to EB-4 petitioners like plaintiffs, as plaintiffs urge the court to do. This relief could reduce the manifestations of the alleged disparate and discriminatory treatment, such as delay and expense.

Defendants' last attempt to dispute plaintiffs' standing is argued in a footnote, which states that plaintiffs cannot plausibly argue that defendants' regulation (8 C.F.R. § 245.2(a)(2)(i)(B)) caused plaintiffs' alleged harm because plaintiffs claim that the processing delays began in 2020, whereas USCIS promulgated the regulation in 2008. Defendants assert that the pandemic, rather than the regulation, was the reason for delays in adjudication. Plaintiffs counter that processing delays persisted even after the "height of the COVID-19 pandemic," suggesting that the regulation, not the pandemic, caused the delays. The court disagrees with

defendants and concludes that plaintiffs have alleged causation because the presence of a confluence of potential causal factors does not negate the causation component of standing. See, e.g., Massachusetts v. EPA, 549 U.S. 497, 523–525 (2007).

Therefore, concluding that plaintiffs have standing, the court moves on to defendants' second argument: that the court should dismiss plaintiffs' challenge to 8 C.F.R. § 245.2(a)(2)(i)(B) in Count 5 of the complaint because it is barred by a six-year statute of limitations. According to defendants, the court should apply the statute of limitations provision in 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Because the USCIS promulgated § 245.2(a)(2)(i)(B) in 2002, defendants argue that the statute of limitations expired in 2008.

Both parties agree, however, that some courts have recognized an exception to the six-year statute of limitations where the agency is applying the regulation against the plaintiff. See, e.g., Am. Stewards of Liberty v. Dep't of Interior, 960 F.3d 223, 228 (5th Cir. 2020), cert. denied sub nom. Yearwood v. Dep't of the Interior, 141 S. Ct. 1062 (2021). Defendants argue that the Seventh Circuit has not adopted this exception and, in any event, USCIS did not take any action to apply the regulation against plaintiffs here. Conversely, plaintiffs argue that the exception applies to USCIS's action here because they are challenging the regulation's specific, substantive impact on them following its application against them, citing Commonwealth Edison Co. v. United States Nuclear Regulatory Com., 830 F.2d 610 (7th Cir. 1987).

The court agrees with defendants that plaintiffs cannot argue that 8 C.F.R. § 245.2(a)(2)(i)(B) was "enforced" or "applied" against them, so the six-year statute of limitations applies and bars the court from hearing plaintiffs' claims regarding 8 C.F.R.

11

§ 245.2(a)(2)(i)(B). In the instant case, plaintiffs have alleged no adverse action against them under the regulation because they did not attempt to file their paperwork concurrently and because USCIS approved their petitions. It is true that 8 C.F.R. § 245.2(a)(2)(i)(B) regulates plaintiffs' behavior—but 8 C.F.R. § 245.2(a)(2)(i)(B) regulates the behavior of all EB-4 petitioners. If the state of being subject to regulation, without application of the rule to plaintiffs, were sufficient to allow a party to challenge an agency's regulation in court under this exception, the exception would swallow the rule. Consequently, the court grants defendants' motion to dismiss plaintiffs' complaint to 8 C.F.R. § 245.2(a)(2)(i)(B) in Count 5 of the complaint.

Defendants' final argument is that the court should dismiss plaintiffs' challenge to USCIS's implementation of 8 U.S.C. § 1356(u)(2)(E) because it is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). The court agrees with this argument. Section 1252(a)(2)(B)(ii) bars judicial review over USCIS's exercise of discretion under 8 U.S.C. § 1356(u)(2)(E), "regardless of whether the judgment, decision, or action is made in removal proceedings." It states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). "[T]his subchapter" refers to Title 8, Chapter 12, Subchapter II, of the United States Code, which is codified at 8 U.S.C. §§ 1151–1381 and thus includes § 1356(u)(2)(E). See Kucana v. Holder, 558 U.S. 233, 237 (2010).

According to defendants, their decision to exclude EB-4 petitioners from premium processing is an exercise of discretion that the court cannot review because § 1356(u)(2)(E) states that USCIS should extend premium processing to "any other immigration benefit type that the Secretary deems appropriate for premium processing." In other words, defendants argue that

12

Congress "stripped" the court's jurisdiction to review plaintiffs' claim here. Plaintiffs counter, and the court agrees, that even if USCIS's premium processing policy is discretionary, the exception for "constitutional claims or questions of law" applies in the instant case.[2] In § 1252(a)(2)(D), Congress created an exception to § 1252(a)(2)(B)(ii)'s jurisdiction stripping and allow plaintiffs to file petitions for review of the Attorney General or the Secretary of Homeland Security's discretion when they bring "constitutional claims or questions of law."

The problem for plaintiffs is that this exception is limited to "petitions for review" that are "filed with an appropriate court of appeals." 8 U.S.C. 1252(a)(2)(D). Thus, this court lacks jurisdiction over plaintiffs' claims for two reasons: first, because plaintiffs have not filed petitions for review, and second, because this court is not a court of appeals. If USCIS had denied plaintiffs' requests for status adjustment, for example, plaintiffs likely would have been able to raise their constitutional and statutory challenges to USCIS's denial in a petition for review in the appropriate court of appeals, so long as they had exhausted the proper administrative mechanism. See, e.g., Hamdan v. Gonzales, 425 F.3d 1051, 1061 (7th Cir. 2005). They did not do so here.

Because the court lacks jurisdiction to review plaintiffs' challenge to 8 C.F.R. § 245.2(a)(2)(i)(B) (the concurrent filing regulation) under the APA and also jurisdiction to review their challenge to USCIS's implementation of 8 U.S.C. § 1356(u)(2)(E) (governing premium processing), the court lacks jurisdiction to hear the claims asserted in Count 5. The

---

[2] Defendants argue that there is no exception to § 1252(a)(2)(b)(ii) when plaintiffs bring constitutional claims implicating the exercise of religion, citing Odei v. United States Dep't of Homeland Sec., 937 F.3d 1092, 1095 (7th Cir. 2019); Holy Virgin Prot. Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff, 499 F.3d 658, 662–63 (7th Cir. 2007). The court disagrees with defendants' characterization. These cases stand for the narrower holding that courts have limited jurisdiction over religious-based constitutional challenges to discretionary removal decisions where those challenges are inextricably intertwined with specific factual determinations and the weighing of evidence. Holy Virgin Prot. Cathedral, 499 F.3d at 663. In the instant case, plaintiffs bring constitutional claims to the overall employment-based visa system and its procedures. See generally Doe v. McAleenan, 926 F.3d 910 (7th Cir. 2019).

court also lacks jurisdiction to hear all plaintiffs' challenges to challenge to USCIS's implementation of 8 U.S.C. § 1356(u)(2)(E) in Counts 1, 2, 3, 4, and 6. The court concludes, however, that it has jurisdiction to hear plaintiffs' concurrent filing challenges to 8 C.F.R. § 245.2(a)(2)(i)(B) in Counts 1, 2, 3, 4, and 6, the court grants defendants' motion to dismiss only in part.

## CONCLUSION

For the reasons stated above, the court grants in part and denies in part defendants' motion to dismiss plaintiffs' third amended complaint [41]. The court grants defendants' motion to dismiss Count 5 with prejudice. The court denies defendants' motion to dismiss Counts 1, 2, 3, 4, and 6 of plaintiffs' third amended complaint to the extent that these counts challenge 8 C.F.R. § 245.2(a)(2)(i)(B). The court directs plaintiffs to file a fourth amended complaint in accordance with the court's ruling, eliminating their challenges to USCIS's implementation of 8 U.S.C. § 1356(u)(2)(E) (governing premium processing), on or before January 19, 2023. Defendants shall respond on or before February 28, 2023. The parties are directed to file a joint status report using this court's form on or before March 7, 2023.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: December 20, 2022**