**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SOCIETY OF THE DIVINE WORD,** | ) | |
| **Chicago Province; NATIONAL** | ) | |
| **SPIRITUAL ASSEMBLY OF THE** | ) | |
| **BAHA'IS IN THE UNITED STATES;** | ) | |
| **ILLINOIS GREAT RIVERS** | ) | |
| **CONFERENCE OF THE UNITED** | ) | |
| **METHODIST CHURCH; PONTIFICAL** | ) | |
| **INSTITUTE FOR FOREIGN** | ) | |
| **MISSIONS; BROWN MISSIONARY** | ) | |
| **BAPTIST CHURCH; INDIA HERITAGE** | ) | |
| **FOUNDATION, NJ/NY INC.;** | ) | |
| **BAPTIST MID-MISSIONS;** | ) | |
| **GENERAL SECRETARIAT OF THE** | ) | |
| **FRANCSICAN MISSIONS, INC.;** | ) | |
| **THE ROMAN CATHOLIC DIOCESE** | ) | |
| **OF DES MOINES; FIRST BAPTIST** | ) | |
| **CHURCH OF KALAMAZOO;** | ) | |
| **GRACE-TRINITY UNITED CHURCH** | ) | |
| **OF CHRIST; BIRMINGHAM** | ) | |
| **CHINESE CHRISTAIN CHURCH;** | ) | |
| **DIOCESE OF PEORIA, ILLINOIS;** | ) | |
| **MISSIONARY SISTERS SERVANTS** | ) | |
| **OF THE HOLY SPIRIT; ALGOOD** | ) | |
| **BAPTIST CHURCH, D/B/A CHURCH** | ) | |
| **ON A HILL; EVANGELICAL** | ) | |
| **LUTHERAN CHURCH OF AMERICA** | ) | |
| **(ELCA), INDIANA-KENTUCKY** | ) | |
| **SYNOD; & EVANGELICAL** | ) | |
| **LUTHERAN CHURCH OF AMERICA** | ) | |
| **(ELCA), NEW JERSEY SYNOD,** | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civ. No. 21-3650** |
| **UNITED STATES CITIZENSHIP AND** | ) | |
| **IMMIGRATION SERVICES (USCIS);** | ) | **COMPLAINT FOR DECLARATORY,** |
| **ALEJANDRO MAYORKAS, Secretary** | ) | **INJUNCTIVE, AND** |
| of the Department of Homeland Security; | ) | **OTHER RELIEF** |
| and **DONNA P. CAMPAGNOLO** | ) | |
| **Director, USCIS California Service** | ) | **Judge Robert W. Gettleman** |

1

Center (CSC),                                    )
                                                 )
        Defendants.                              )

## FOURTH AMENDED COMPLAINT[1]

### I.      Introduction

Plaintiffs are Internal Revenue Act § 501(c)(3) tax-exempt religious institutions that have

their headquarters in the United States.  They exercise their religious beliefs and advance them in

practice by employing foreign-born ministers and international religious workers. The plaintiffs

rely on fair and effective legal mechanisms to select and employ those workers in the United

States.  They complain that the defendants' regulations, policies, and practices discriminate

against U.S.-based religious employers and their selected international religious workers, while

interfering with their rights to appoint and employ ministers, and thus violate the First

Amendment of the United States Constitution's Free Exercise and Establishment Clauses, the

Due Process and Equal Protection Clauses, the Religious Freedom Restoration Act, the

Immigration and Nationality Act, and the Administrative Procedure Act, by providing benefits

and advantages to non-religious employers that they expressly withhold from religious

organizations.  *See e.g. Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. ___ , 137

S. Ct. 2012 (2017); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 521-533

---

[1] The Court's December 20, 2022 Memorandum Opinion and Order, granting in part and denying in part defendants' Motion to Dismiss, held that plaintiffs' Administrative Procedure Act claim in Count 5 of the Third Amended Complaint was barred by a statute of limitations since plaintiffs had not sought to concurrently file their petitions and religious workers' adjustment applications. It also found it lacked jurisdiction over claims based on USCIS's discretionary decision to withhold premium processing to the plaintiff religious organizations. It instructed plaintiffs to file this Fourth Amended Complaint without those legal claims.  This amended complaint thus eliminates Count 5 of the Third Amended Complaint and references to premium processing in the surviving counts.  However, plaintiffs will occasionally mention and refer to USCIS's decision to withhold premium processing, as they do to other religion-adverse actions of the defendants, to provide context and a clearer and complete explanation of why they had to litigate this case in light of limited alternative options.

(1993) (non-neutral laws and practices that impose special disabilities on religion are subject to exacting or strict scrutiny).

Beyond the unconstitutional harm of disparate and discriminatory treatment, the direct result of these policies, combined with the defendants' unfathomable delays in deciding requests for immigration benefits, exceeding two years in most cases, is to deprive the plaintiffs of both Constitutional and statutory rights and opportunities to employ their chosen foreign-national religious ministers and religious workers in the United States to advance their religious ministries, require plaintiffs to divert scarce resources and choose between employing their chosen ministers or facing civil penalties, and impose additional burdens on them that secular employers do not face.

The plaintiffs, and all religious organizations that file I-360 petitions, face similar harms arising from the defendants' discriminatory policies. These include:

- By USCIS's excluding them from available programs like concurrent filing and premium processing, U.S.-based religious organizations may need to dismiss ministers or put their R-1 ministers and religious workers on temporary leave while in the United States or possibly require them to depart the United States at the end of reaching their 5-year maximum in R-1 status;

- U.S.-based religious employers may need to file for R-1 extensions for employees who may be eligible for extensions or to recapture time the employees spent outside the United States, thus incurring additional delays, costs, and diversion of resources from the religious mission;

- U.S.-based religious organizations may need to divert resources to request expedited action from USCIS, seek Congressional assistance, or possibly come up with other

3

workarounds, including repeated petitions or applications for immigrant benefits early or prophylactically before they have made final employment or placement decisions, just to ensure ongoing employment authorization for necessary religious workers;

- U.S.-based religious employers may face potential liability for employer sanctions if they choose to exercise their religion by continuing to employ religious workers beyond the period of their authorized stay in the U.S., or violating their religious beliefs and exercise by ceasing such religious employment;

- Religious workers' dependent minor children may age out of eligibility due to USCIS delays;

- Religious organizations may hesitate and refrain from bringing other non-citizen religious workers in the future due to uncertainties with USCIS delays.

## II.    Jurisdiction and Venue

1. The Court has subject matter jurisdiction in this action pursuant to: 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201 (Creation of Remedy- Declaratory Judgment Act); 42 U.S.C. § 2000bb, *et seq*. (Religious Freedom Restoration Act); the First Amendment to the U.S. Constitution (Establishment and Free Exercise Clauses); and the Fifth Amendment to the U.S. Constitution (Due Process and Equal Protection Clauses).[2]  This case does not involve any discretionary action that might deprive the Court of jurisdiction, but rather involves questions of law.

---

[2] Earlier complaints included individual Mandamus claims involving delayed adjudication of specific I-360s.  Those I-360s have all been approved at this time, so plaintiffs have dropped these claims.  Previous complaints also included claims under the Administrative Procedure Act that the Court found were barred by the federal 6-year statute of limitations (Third Am. Compl., Count 5), and against the defendants' decision to deny premium processing to religious organizations filing immigrant visa petitions for their workers that the Court found was barred by 8 U.S.C. § 1252(a)(2)(B).  Plaintiffs reserve the right to raise these related claims on appeal, if necessary.

2. This action also arises under the 8 U.S.C. 1101 et seq. (Immigration and Nationality Act), particularly 8 U.S.C. §1255(a) and (c) that specify respective authorizations to file, accept, and adjudicate applications for adjustment of status.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C). The defendants are officers or employees of the United States or agencies of the United States acting in their official capacity. Two of the plaintiffs reside in this district and no real property is involved in this action.

### III.   The Parties

4. Plaintiff Society of the Divine Word, Chicago Province ("SVD" as it is known from its Latin name Societas Verbi Divini) is an international religious order of missionary Roman Catholic priests and brothers based in Techny, Illinois within the jurisdiction of this Court. The Chicago Province of SVD provides priests to serve at Roman Catholic parishes and other locations throughout Illinois; other states east of the Mississippi River, including Wisconsin, Iowa, Pennsylvania, West Virginia, Tennessee, Missouri, Ohio, and New Jersey; Canada; and the Caribbean Islands. It has a campus and notable presence in the Techny/Northbrook area just north of Chicago. It also runs the only Catholic missionary preparatory college in the United States, Divine Word College, located in Epworth, Iowa. As an international religious order, the SVD is a regular user of the defendants' Religious Worker visa programs in order to facilitate travel and admission of its foreign-born members for purposes of religious work, study, and religious visits and observances in the United States.

5. Plaintiff the National Spiritual Assembly of the Baha'is in the United States has its administrative offices in Evanston, Illinois within the jurisdiction of this Court. The

National Spiritual Assembly of the Baha'ís of the United States is dedicated to the belief that humanity is one single race and the day has come for its unification in one global society. It employs members to serve around the world, including at the Baha'í International Community (BIC), which represents the Baha'í Faith and acts on behalf of its 184 national affiliates in religious and non-governmental activities at the United Nations in New York City, maintaining an extensive portfolio of issues and thematic areas that it follows and engages in within the framework of the U.N.'s Economic and Social Council. Guided by the teachings of the Baha'í Faith, the BIC strives to further U.N. discourses and processes in the field of development, human rights, sustainability, the equality of women and men and the role of religion in society by offering those insights and approaches that affirm the importance of the coherence between the material and spiritual aspects of human life.

6. Plaintiff Illinois Great Rivers Conference of the United Methodist Church (IGRC-UMC) is comprised of approximately 830 local churches in 87 counties of central and southern Illinois, and has its administrative offices in Springfield, Illinois. IGRC-UMC is a part of the General Council on Finance and Administration of the United Methodist Church, which includes all United Methodist Conferences within the United States, and which has its offices in Nashville, Tennessee. Members of the United Methodist clergy are appointed to serve as Pastors at local churches within the IGRC-UMC by the Conference's Bishop, Frank J. Beard. IGRC-UMC regularly files immigrant and non-immigrant petitions with the USCIS to allow United Methodist clergy from abroad to fill vacant pastoral positions at United Methodist churches within Illinois. Those pastors lead Sunday worship services, direct religious education, conduct baptisms, weddings,

and funerals for church members, and generally provide pastoral and spiritual care to the church.

7. Plaintiff Pontifical Institute for Foreign Missions (PIME) is a Roman Catholic religious organization founded in 1850 and composed of Catholic priests and brothers serving in developing countries around the world to provide humanitarian and missionary services to those in need. PIME also has a U.S. Mission Center, in Detroit, Michigan, which supervises international mission projects and shares mission awareness throughout the United States. It uses the religious worker visa program to sponsor foreign-born priests and brothers whose services are needed at the U.S. Mission Center.

8. Plaintiff Brown Missionary Baptist Church is a Baptist church founded in 1882 and currently located in Southaven, Mississippi. Brown Missionary Baptist Church is seeking to establish a Hispanic ministries program in its community to reach out to local immigrants and for this purpose is using the religious worker visa program to sponsor a Spanish-speaking pastor from Peru.

9. Plaintiff India Heritage Foundation, NJ/NY Inc. is a religious non-profit organization established in 2014 in Edison, New Jersey committed to preserving the best-practiced traditions of the Vedas (ancient Hindu texts) and to promote them among youth of Indian descent around the world. As part of this effort, the India Heritage Foundation seeks to use the religious worker program to sponsor Hindu priests from India.

10. Plaintiff Baptist Mid-Missions, located in Cleveland, Ohio, is a Baptist religious organization that conducts religious missions in countries throughout the world, including the United States, in partnership with Baptist churches, to strategically advance the

building of Christ's church.   The organization uses the religious worker visa program to sponsor foreign-born missionaries for service in the United States.

11. Plaintiff General Secretariat of the Franciscan Missions, Inc. (Franciscans), based in Burlington, Wisconsin, is part of the Franciscan religious order, an international Roman Catholic religious order inspired by St. Francis of Assisi that provides religious and missionary services in many countries, including the United States.  The General Secretariat was formed to assist Franciscan missions around the world and educate communities about the contributions of these missions.  The organization uses the religious worker visa program to sponsor foreign-born staff members, including members of Franciscan orders serving in furtherance of their religious vocation.

12. Plaintiff The Roman Catholic Diocese of Des Moines is a Roman Catholic Diocese in the United States consisting of over 80 parishes and 100,000 members in central Iowa.  The Diocese uses the religious worker visa program to sponsor foreign-born priests to staff its parishes.

13. Plaintiff First Baptist Church of Kalamazoo, located in Kalamazoo, Michigan, is a member congregation of the American Baptist Churches and is using the religious worker visa program to sponsor a foreign-born pastor.

14. Plaintiff Grace-Trinity United Church of Christ is a Christian church located in Philadelphia, Pennsylvania founded 25 years ago to connect people who are new to the city.  It is using the religious worker program to sponsor a foreign-born pastor.

15. Plaintiff Birmingham Chinese Christian Church (also "BCCC") was formed in 1984 and is an integral part of Birmingham, Alabama's nondenominational Chinese speaking

community, with some 115 members attending services each week. It is using the religious worker program to sponsor its foreign-born minister.

16. Plaintiff Diocese of Peoria, Illinois is the Roman Catholic Diocese serving the area in and around Peoria, Illinois. It uses the religious worker program to sponsor foreign-born priests.

17. Plaintiff Missionary Sisters Servants of the Holy Spirit (SSpS) is an international Roman Catholic religious order for women with approximately 3,000 members from 50 countries. Its U.S. Motherhouse is located in Northfield, Illinois. It uses the religious worker program to sponsor foreign-born sisters coming to the United States to serve in their religious vocation.

18. Plaintiff, Algood Baptist Church, d/b/a Church on a Hill is a Baptist congregation of about seventy members in Cookeville, Tennessee. It is a church plant of the Church on a Hill. Algood Baptist Church is using the religious worker visa program to sponsor its foreign-born pastors.

19. Plaintiff, Evangelical Lutheran Church of America (ELCA), Indiana-Kentucky Synod, is one of the 65 Synods of ELCA, a nationwide organization of Lutheran congregations. It consists of 175 congregations in the states of Indiana and Kentucky. It regularly uses the religious worker visa program to sponsor its foreign-born pastors and other religious workers.

20. Plaintiff, Evangelical Lutheran Church of America (ELCA), New Jersey Synod, is one of the 65 Synods of ELCA, a nationwide organization of Lutheran congregations. It consists of 157 congregations in the state of New Jersey. It regularly uses the religious worker visa program to sponsor its foreign-born pastors and other religious workers.

21. Defendant United States Citizenship and Immigration Services (USCIS) is a federal agency within the Department of Homeland Security responsible for adjudicating immigration benefit applications.

22. Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the Department of Homeland Security (DHS). The Secretary of Homeland Security is responsible for the administration and enforcement of laws related to the immigration of foreign nationals. *See* 8 U.S.C. § 1103(a)(1).

23. Defendant Donna Campagnolo is sued in her official capacity as the USCIS's Director of the California Service Center (CSC). She is responsible for the administration of the CSC, the USCIS service center that adjudicates Form I-360 petitions for religious ministers and other religious workers.

### IV.    Facts and Relevant Statutory and Regulatory Provisions

24. Plaintiffs all use and rely on the fair and timely adjudication of immigrant visa petitions and applications for immigration benefits to ensure their ability to select ministers of their own choosing, employ religious workers in the United States, prepare students and other religious adherents, and invite religious visitors to participate in protected religious worship and other activities in the United States.

### The Immigration and Nationality Act (INA) Provisions for Ministers and Religious Workers

25. The INA provides up to 5,000 visas per fiscal year to certain ministers of religious denominations, religious professionals in religious vocations or occupations, or other religious workers in religious vocations or occupations. 8 U.S.C. §§ 1153(b)(4); 1101(a)(27)(C)(ii). Visa applicants may be living overseas or already in the United States and many individuals who are already present in this country entered on a non-

immigrant visa, also known as an R-1 visa. *See Id.* § 1101(a)(15)(R). Individuals who hold R-1 visas may stay in the United States for up to five years. *Id.* § 1101(a)(15)(R)(ii). R-1 visa holders must depart after five years unless they apply to "adjust status" prior to the expiration of their R-1 status. If the alien does none of these things, then he or she will be considered in violation of status and his or her presence in the United States will be unlawful, making him or her ineligible to adjust status. 8 U.S.C. §§ 1255(c), (k). Further, if the alien accrues a period of unlawful presence of more than 180 days, the alien is statutorily ineligible for adjustment of status, and becomes inadmissible and cannot return to the United States for periods of three to ten years thereafter. *Id.* §§ 1255(k); 1182(a)(9)(B)(i)(I)-(II) and (ii).

### The INA's Provisions Relating to Petitions by Non-Religious Employers, Ministers, Religious Workers, and their Employers

26. Special immigrant ministers and other religious workers, or their employers acting on their behalf, can seek classification by filing a petition under 8 U.S.C. § 1154(b)(4). 8 U.S.C. § 1154(a)(1)(G)(i). This section imposes no preconditions on when the minister or religious worker may file the petition, though certain other types of special immigrants may need a prerequisite recommendation before being allowed to do so.  8 U.S.C. § 1154(a)(1)(G)(ii).  This category of immigrant visas is known as the EB-4 immigrant preference category. Other employment-based immigrant preference categories, defined at 8 U.S.C. § 1153(b)(1) (priority worker categories), (2) (advanced degree and exceptional ability workers category), (3) (professionals and skilled workers), and (5) (job creation category), allow either the person seeking classification or their employer, depending on the category, to file a petition for classification with the Attorney General (read Secretary of Homeland Security after the Homeland Security Act of 2003

transferred authority from the Attorney General to the Secretary of DHS). These categories are known as the EB-1, EB-2, EB-3, and EB-5 immigrant preference categories respectively.

**Defendants' Regulations Requiring Petitions for Employment-Based Immigrants**

27. USCIS regulations specify use by non-religious employers of its Form I-140 Petition for Immigrant Worker, to classify workers in the EB-1, EB-2, and EB-3 preference categories of 8 U.S.C. § 1153(b)(1)-(3), while religious workers and their employers under 8 U.S.C. § 1153(b)(4) file for classification on Form I-360. 8 C.F.R.§ 204.5(a).

**The INA's Provisions for Adjustments of Status**

28. In addition to filing a Form I-360 petition, a non-citizen seeking to adjust status to that of a lawful permanent resident must apply for adjustment of status using Form I-485. Under the INA, applicants may adjust status if (1) they make an application; (2) they are eligible to receive a visa; and (3) a visa is immediately available. 8 U.S.C. § 1255(a). The INA does not specify when a visa is immediately available, nor does it temporally restrict an applicant from filing an adjustment application, but applicable regulations make clear a visa is "immediately available" when the Visa Bulletin states that the specific visa category has visas available in it. 8 C.F.R. § 245.1(g)(1) ("A preference immigrant visa is considered available for accepting and processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current).").

29. Notwithstanding 8 C.F.R. § 245.1(g)(1), and in apparent contradiction to it, 8 C.F.R. § 245.2(a)(2)(i)(B) allows special immigrant religious workers to file a Form I-485 application for adjustment of status to lawful permanent resident only after USCIS

approves a Form I-360 petition. Other classes of alien workers may file a petition for a

visa and a Form I-485 application for adjustment of status at the same time, which is

known as concurrent filing. *Id.*

### Defendants' Processing Delays Causing Religious Workers to Become Ineligible to Adjust Status

30. Since R-1 status is time-limited, the ability to timely file an I-485 adjustment of status

application can be important to avoid interrupting religious workers' employment in the

United States. Based on information, taken from the defendants' website, and belief,

backlogs in processing I-360 petitions for religious workers and I-765 applications for

employment authorization have steadily grown over the past several years:

Processing Time Delays - I-360 processing time delays for Religious workers

### I-360

| | |
|---|---|
| March 3, 2020 | 5 to 7 months |
| June 18, 2020 | 7 to 9.5 months |
| June 24, 2020 | 8 to10.5 months |
| July 29, 2020 | 8.5 to 11 months |
| August 24, 2020 | 9.5 to 12.5 months |
| October 16, 2020 | 10.5 to 13.5 months |
| October 28, 2020 | 11.5 to 15 months |
| December 29, 2021 | 13.5 to 17.5 months |
| January 25, 2021 | 15 to 19.5 months |
| February 19, 2021 | |
| February 23, 2021 | 16.5 to 21 months |
| April 9, 2021 | 17 to 22 months |
| April 13, 2021 | 17 to 22 months |
| April 28, 2021 | 18.5 to 23.5 months |
| June 1, 2021 | 19 to 24.5 months |
| June 24, 2021 | 20-26 months |
| October 3, 2021 | 20.5-27 months |
| December 27, 2022 | 19.5 months[3] |

---

[3] At some point in 2022, USCIS changed its articulation of how it calculates processing times on its website. Now, the website asserts that 80% of petitions are adjudicated within the stated period.

The USCIS will not accept inquiries about even long-pending I-360 petitions. According to the defendant USCIS's website, the California Service Center's processing times for I-360 petitions includes the information: "We only allow inquiries for cases that are well outside the processing time listed above." (https://egov.uscis.gov/processing-times/) (last visited December 27, 2022).

### Defendants' Policies Designed to Alleviate the Impact of Delays for Non-Religious Employers that do not Extend to Religious Employers

31. To prevent USCIS processing delays from thwarting Congress's policy to permit employment-based immigration, both Congress and the defendants have enacted certain safeguards to help persons facing these types of delays.

### INA § 245(k), 8 U.S.C. § 1255(k)- Congress's Intent to Protect All Employment-Based Immigrants' Eligibility to Adjust Status Notwithstanding USCIS Processing Delays

32. In 1997, Congress enacted legislation on adjustment of status applicants. Among other provisions, recognizing that then Immigration and Naturalization Service (INS) delays were causing employment-based applicants to lose employment and to protect their employers, Congress allowed certain employment-based visa applicants to adjust status under §§ 245(a) and (k) if they have not been out of status for an aggregate period exceeding 180 days. PL. 105-119, title L § 111, 111 Stat. 2440, 2458-59 (Nov. 26, 1997). Section 245(k) applies to religious workers under the EB-4 category as well as non-religious workers in the EB-1, EB-2, and EB-3 categories, but by its terms does not protect adjustment of status applicants who are out of status or who work without authorization beyond 180 days.

### Congressional Policy Regarding Processing Times

33. Consistent with § 245(k), Congress has also legislated, both generally and in pertinent part at 8 U.S.C. § 1571(b), that: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application…."

**Concurrent Filing for Non-Religious Employment-Based Adjustment Applicants**

34. USCIS regulations permit employers and employees in the EB-1, EB-2, and EB-3 categories to file I-140 visa petitions and I-485 applications for adjustment of status "whether submitted concurrently with or subsequent to the visa petition…." 8 C.F.R. § 245.2(a)(2)(i)(B). This concurrent-filing benefit protects the employee from becoming ineligible to file for adjustment of status owing to USCIS processing delays or otherwise through a status violation or unauthorized employment. A critical benefit for adjustment applicants subject to processing delays is that they are eligible to receive employment authorization based on their pending I-485, 8 C.F.R. § 274a.12(c)(9), and will not be made ineligible to adjust status by virtue of reaching the end of their current nonimmigrant status. But 8 C.F.R. § 245.2(a)(2)(i)(B) restricts religious workers, for whom "the alien beneficiary may file the adjustment application *only after the Service has approved the visa petition.*" (emphasis supplied).

**Premium Processing**

35. Another way Congress sought to protect employment-based immigration was to authorize the Department of Homeland Security "to establish and collect a premium fee" for certain immigration petitions. 8 U.S.C. § 1356(u).

36. USCIS, however, permits premium processing only for certain "employment-based benefit requests" that it designates. 8 C.F.R. § 106.4(e). Specifically, USCIS permits

many I-140 petitioners to obtain premium processing adjudications, but not I-360 religious petitioners. *See*, https://www.uscis.gov/i-907; https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing.

37. Extending concurrent filing and premium processing to Forms I-360, which defendants do for non-religious employers, would alleviate the burdens that USCIS processing delays impose on religious employers, by providing their religious workers with employment authorization, travel authorization, and protection from the consequences of being unlawfully present in the United States, while their adjustment of status applications are being processed. But despite extending premium processing to many employment based petitions, USCIS has not done so for religious employment.

**Relevant Facts Relating to Plaintiff Society of the Divine Word (SVD)**

38. At the time of this amended Complaint, plaintiff SVD has filed I-360 petitions for five of its members, each one an ordained Catholic priest who is serving in R-1 status in the United States. These members include:

   a. Fr. Francis Xavier Rayappan, a citizen of India, who has been serving at Divine Word College in Epworth, Iowa, as part of the SVD's recruiting, vocation, and formation team. In May of 2021 the SVD's Provincial Superior for the plaintiff, The Very Rev. Quang Duc Dinh, assigned Fr. Rayappan to the Midwest District of the Chicago Province to serve as a Catholic priest to the newly unified parish of Our Lady of Africa in Chicago. The SVD filed an I-360 petition for him on October 3, 2019, Receipt # WAC 2090001002. Because the regulations prohibit concurrent filing and premium processing, in September 2020 the SVD filed to recapture time he spent outside the United States and extend his R-1 status. On

June 24, 2021, USCIS approved the extension, but Fr. Rayappan's R-1 status reached its five-year maximum on July 20, 2021. USCIS approved his I-360 after the original complaint in this case was filed, and Fr. Rayappan then filed an application for adjustment of status, Receipt # LIN2190506736 along with applications for employment authorization and advance parole. USCIS approved Fr. Rayappan's ancillary applications for employment authorization and advance parole on October 14, 2021 and his application for adjustment of status on February 3, 2022 but not before SVD had to place Fr. Rayappan on leave for almost three months to avoid employer sanctions. Due to USCIS processing delays, SVD had to wait over two years before obtaining certainty on whether Fr. Rayappan could serve the order permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

b. Fr. Thien Duc Nguyen, a citizen of Vietnam, who is serving as the pastor at St. Thomas' Parish, Gassaway, West Virginia. The SVD filed an I-360 petition for him on March 4, 2020, Receipt # WAC 2090002001. Fr. Nguyen's R-1 status expired on May 15, 2021. Since he could not concurrently file an I-485 adjustment application, and the SVD could not request premium processing due to the defendants' rules, the SVD was required to expend administrative and financial resources to further extend his R-1 status to December 2021. Receipt # WAC 2120451075. USCIS approved Fr. Nguyen's I-360 after the original

complaint in this case was filed, and Fr. Nguyen filed an application for adjustment of status and accompanying applications for employment authorization and advance parole. USCIS approved his applications for employment authorization and advance parole on April 21, 2022. But by then, his R-1 status had already expired, causing a lapse in his employment authorization for several months. USCIS has now approved Fr. Nguyen's adjustment of status application, though the SVD had to wait over two years without obtaining certainty on whether Fr. Nguyen would be allowed to serve the order permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

c. Fr. Romeo Mongaya Bacalso, a citizen of the Philippines, who is serving as the administrator at St. Patrick's parish in Hinton, West Virginia. The SVD filed an I-360 petition for him on February 9, 2021, Receipt # WAC 2190052292. USCIS approved Fr. Bacalso's I-360 after the original complaint in this case was filed, and Fr. Bacalso filed his application for adjustment of status and accompanying application for employment authorization. But USCIS did not approve Fr. Bacalso's application for employment authorization until April 20, 2022. This was not soon enough to prevent Fr. Bacalso's employment authorization from lapsing for almost four months as his R-1 status expired January 1, 2022. USCIS subsequently granted Fr. Bacalso's application for adjustment of status, though as a result of USCIS's processing delays, SVD had to wait some eighteen months

without obtaining certainty on whether Fr. Bacalso could serve the order permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

d. Fr. Phelim Jordan, who is a citizen of Ireland. His I-360 petition was filed on September 22, 2020, Receipt # WAC 2090172050. He is serving at the SVD's Divine Word House in Washington, D.C. USCIS approved Fr. Jordan's I-360 after the original complaint in this case was filed, and Fr. Jordan filed his application for adjustment of status and accompanying applications for employment authorization and advance parole. But USCIS did not approve Fr. Jordan's applications for employment authorization and advance parole until April 20, 2022. This was not soon enough to prevent Fr. Jordan's employment authorization from lapsing as his R-1 status expired on December 4, 2021. USCIS has now approved Fr. Jordan's application for adjustment of status, though as a result of USCIS's processing delays, SVD had to wait some two years without obtaining certainty on whether Fr. Jordan could serve the order permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

e. Fr. Messan Tettekpoe, who is a citizen of Togo. SVD filed his I-360 petition on September 24, 2021, Receipt # WAC 2190140088. USCIS approved his I-360

after the first amended complaint in this case was filed, and Fr. Tettekpoe filed an
application for adjustment of status and accompanying applications for
employment authorization and advance parole. USCIS approved his applications
for employment authorization and advance parole on June 9, 2022, and
subsequently granted his adjustment of status application. Case No.
LIN2290072028. As a result, SVD had to wait over nine months without
obtaining certainty as to whether Fr. Tettekpoe would be able to serve the order
permanently in the United States.

39. The Society of the Divine Word will continue to file I-360 petitions for its ministers
whom it decides should continue to minister in the United States.

**Relevant Facts Relating to Plaintiff National Spiritual Assembly of the Baha'is in the
United States**

40. Plaintiff the National Spiritual Assembly seeks to permanently employ Ms. Saphira
Rameshfar, a citizen of Australia, as a Representative to the United Nations with its
Baha'i International Community in New York City. It filed a form I-360 for her on
December 4, 2019, which USCIS approved on January 8, 2021, only days before her R-1
status would expire, and only after the National Spiritual Assembly informed USCIS that
it would bring suit to compel adjudication of the petition. Because Ms. Rameshfar's R-1
status expired in January 2021, she was then unable to be employed in the United States
until USCIS granted her an employment authorization document. She applied for that
document on January 19, 2021, Receipt # LIN 2190161648, when she also filed an
adjustment of status application or Form I-485, Receipt # LIN 2190161647, and a request
for permission to travel on an advance parole, Receipt # LIN 2190161649. Defendants
approved her requests for employment and travel authorization after the original

complaint in this case was filed.  But in the meantime, she had to remain off the payroll and the National Spiritual Assembly was unable to use her services for over six months. She was also unable to visit her sick mother in Australia during this time.  USCIS approved her application for adjustment of status in October 2021.  Due to USCIS processing delays, the National Spiritual Assembly had to wait almost two years before obtaining certainty on whether Ms. Rameshfar could serve them permanently in the United States.  It has also had to expend resources to follow up on her I-360 and application for employment authorization to avoid a lapse in her employment authorization and to prevent her from having to leave the United States before she could apply for adjustment of status.

41. If Ms. Rameshfar and the National Spiritual Assembly had been able to concurrently file the I-360 and I-485 applications, they would not have experienced the disruption of their religious missions nor the impositions placed on Ms. Rameshfar's personal liberty.

42. The National Spiritual Assembly has previously brought religious workers to the United States in R-1 visa status to serve as representatives to the U.N. and it continues to do so. In appropriate cases, it will file other I-360 petitions in the future.

### Relevant Facts Relating to Plaintiff Illinois Great Rivers Conference of the United Methodist Church

43. Plaintiff, Illinois Great Rivers Conference of the United Methodist Church seeks to employ Rev. Enrico Retotar Esguerra, a citizen of the Philippines, permanently as a pastor within the Conference.  Since December 2018 Rev. Esguerra has served in a joint appointment as Pastor of the Goreville United Methodist Church in Goreville, Illinois, and the Creal Springs United Methodist Church in Creal Springs, Illinois, in non-immigrant R-1 status.  Previously, from 1995 through November 2018, Rev. Esguerra

served in various appointed pastoral positions in the Philippines Annual Conference of the United Methodist Church.

44. On December 9, 2019 the IGRC-UMC filed an I-360 immigrant petition on behalf of Rev. Esguerra, Receipt # WAC 2090037566.  When Rev. Esguerra traveled to the United States in December 2018, his family members, including his wife and three children, traveled with him and were admitted in R-2 status as Rev. Esguerra's dependents. Included in those dependent family members is Rev. Esguerra's son, Henrick August Esguerra, born November 7, 1999.  If Rev. Esguerra had been permitted to file concurrent I-485 applications for adjustment of status for himself and his R-2 family members with the Conference's I-360 petition, the family would have been granted employment authorization documents, and Henrick Esguerra's future with his parents and siblings in the United States would have been secure.

45. When Rev. Esguerra's son, Henrick, had his twenty first birthday on November 7, 2020, he lost his eligibility for R-2 status.  Because he was not eligible to apply for adjustment of status, on September 9, 2020, Henrick had to file a Form I-539 application for a change of status to student status, to allow him to continue his education and to remain with his family in Illinois, Receipt # SRC 20 904 61355.

46. USCIS finally approved this I-360 on October 18, 2021.  But the failure of the defendants to adjudicate the I-360 within a reasonable time, combined with the USCIS's regulations prohibiting concurrent filing of adjustment of status applications for beneficiaries of I-360 immigrant visa petitions placed the stability and unity of Rev. Esguerra's immediate family in jeopardy.  The unstable and precarious situation of Rev. Esguerra's family placed his continued service as a pastor at the Goreville and Creal Springs United

22

Methodist Churches at risk and harms the Conference in its ongoing efforts to provide pastoral care to those communities.  USCIS subsequently approved the family's applications to adjust status.  But the Conference had to wait over two and half years to obtain certainty as to whether it could employ Rev. Esguerra permanently in the United States, and has to had to expend time and resources following up on the various applications and petitions for Rev. Esguerra and his family to ensure they are able to stay in the United States and to minimize any lapse in Rev. Esguerra's employment authorization.

**Relevant Facts Relating to Plaintiff Pontifical Institute for Foreign Missions**

47. Pontifical Institute for Foreign Missions filed a Form I-360, Receipt # WAC 2190073027, for Fr. Daniele Criscione, a citizen of Italy, so that Fr. Criscione may serve at PIME's U.S. Mission Center in Detroit, Michigan.  It filed this petition on April 7, 2021, and USCIS approved it on December 13, 2021.

48. Fr. Criscione filed an application for adjustment of status and accompanying applications for employment authorization and advance parole on January 27, 2022, and USCIS approved his I-765 and I-131 on March 30, 2022.

49. USCIS subsequently granted Fr. Criscione's application for adjustment of status, but PIME had to wait for well over a year without obtaining certainty as to whether it would be able to employ Fr. Criscione permanently.

**Relevant Facts Relating to Plaintiff Brown Missionary Baptist Church**

50. Brown Missionary Baptist Church filed a Form I-360 for Pastor Jaime Armando Loayza Rojas; his wife, Serenith; and his children, Esteban, Samuel, and Josue, all citizens of

Peru, so that he may serve as their Pastor of Hispanic Ministries. Receipt # WAC 2190041675. It filed this on January 11, 2021.

51. Brown Missionary Baptist Church requested an expedite of this I-360 petition, and USCIS denied this request on September 28, 2021. That same day, the Church asked for Congressional assistance.

52. USCIS eventually approved the I-360 on December 29, 2021, and Pastor Loayza Rojas and his family filed applications for adjustment of status and accompanying applications for employment authorization and advance parole. USCIS approved the applications for employment authorization and advance parole for Pastor Loayza Rojas and his wife and children on April 14, 2022 and subsequently approved their adjustment applications. *See* case nos. SRC 2290096228, SRC 2290096234, SRC 2290096225, SRC 2290096231, SRC 2290096222.

53. Pastor Loayza Rojas reached the end of his five years of R-1 status on October 27, 2021 and was without employment authorization for six months due to USCIS's processing delays.

54. Pastor Loayza Rojas is in the middle of establishing a satellite "daughter" church for the Brown Missionary Baptist Church that focuses on serving the Spanish-speaking immigrant community. This ministry is only a few months old. Pastor Loayza Rojas's lack of employment authorization due to USCIS's delay in processing his I-360 caused disruption to this ministry, which is still in an early and fragile state, and the Church's outreach efforts in the Hispanic community.

55. Furthermore, Brown Missionary Baptist Church has had to wait almost eighteen months without obtaining certainty on whether Pastor Loayza Rojas could serve the church

24

permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

**Relevant Facts Relating to Plaintiff India Heritage Foundation, NJ/NY Inc.**

56. Plaintiff India Heritage Foundation, NJ/NY Inc. filed I-360s for two Hindu priests on April 20, 2020, as described below:

   a. It filed a petition for Harsh Vardhan Sharma. Receipt # WAC 2090100422. USCIS approved this petition after the amended complaint in this case was filed, and Mr. Sharma filed applications for adjustment of status and employment authorization. USCIS approved his application for employment authorization in June 2022, but Mr. Sharma reached the maximum period of his R-1 stay on October 5, 2021 and India Heritage Foundation had to take him off the payroll for over eight months because he did not have work authorization. USCIS subsequently granted his application for adjustment of status, but not before India Heritage Foundation had to wait over two years without obtaining certainty as to whether it would be able to employ Mr. Sharma permanently in the United States.

   b. It filed a petition for Satyabrata Jena. Receipt # WAC 2090100423. USCIS approved this petition after the amended complaint in this case was filed, and Mr. Jena filed applications for employment authorization and adjustment of status. USCIS approved his application for employment authorization in June 2022, but Mr. Jena reached his maximum period of R-1 stay on December 21, 2021. As a result, India Heritage Foundation had to take him off the payroll for six months

25

because he did not have employment authorization. USCIS more recently approved Mr. Jena's application for adjustment of status but not before India Heritage Foundation had to wait over two years without obtaining certainty as to whether it would be able to employ him permanently in the United States.

57. The lapse in employment authorization for both of these priests caused disruption to India Heritage Foundation's religious exercise and ability to provide religious services to its adherents.

**Relevant Facts Relating to Baptist Mid-Missions**

58. Baptist Mid-Missions filed an I-360 petition for Jean Tsen, a citizen of Malaysia, on May 1, 2020, Receipt # WAC2090107006, so that Ms. Tsen may serve as a missionary with Baptist Mid-Missions at a church-planting project in Boston, Massachusetts. This petition was pending for over eighteen months before USCIS approved it on December 6, 2021.

59. While it was pending, Baptist Mid-Missions sought Congressional assistance from Senator Tina Smith with no result.

60. Ms. Tsen reached her maximum period of R-1 stay on October 27, 2020. As a result, she had to leave the United States, and Baptist Mid-Missions had to reassign her to a project in the United Kingdom.

61. Due to USCIS's delay in processing this I-360, Baptist Mid-Missions's religious activities have been disrupted. Because Ms. Tsen had to leave the United States, the Boston church-planting project that she was involved in has missed her services as a counselor, church ministry leader, and outreach coordinator. The lead church planter has had to take on many of her duties, which has been a burden to him and has resulted in the

project being able to serve fewer people. In addition, Baptist Mid-Missions has had to divert resources to pursuing unsuccessful requests to expedite adjudication of the I-360. Baptist Mid-Missions now must wait for Ms. Tsen's immigrant visa to be processed at a U.S. consulate abroad before it may resume employing her in the United States, and it has so far had to wait well over two years without obtaining certainty as to whether it will be able to employ her permanently in the United States.

**Relevant Facts Relating to General Secretariat of the Franciscan Missions, Inc.**

62. The Franciscans filed an I-360 petition for Fr. Devassy Joy Kuruthukulallgara, O.F.M., a citizen of India, on December 8, 2020, Receipt # WAC 2190023765, so that he may continue to serve as a business manager to the Secretariat pursuant to his religious vocation as a vowed member of the Franciscan order and an ordained Roman Catholic priest.

63. USCIS approved this petition after the amended complaint in this case was filed, and Fr. Kuruthukulallgara filed applications for adjustment of status, employment authorization, and advance parole on January 13, 2022. USCIS approved his application for employment authorization on March 30, 2022. But in the meantime, he reached his maximum period of R-1 stay on January 20, 2022, and he had to stop working for the Franciscans for over two months. During this time when he could not work, both he and the Franciscans suffered hardships. He was unable to serve in a parish and had to cancel several parish commitments. He was also unable to complete his duties at the Franciscans' financial office, which caused delays in recording income, paying bills, managing employee payroll, and other important financial tasks.

64. USCIS more recently approved Fr. Kuruthukulallgara's I-485 adjustment application, Case No. LIN2290112817, but not before the Franciscans had to wait over eighteen months without obtaining certainty as to whether Fr. Kuruthukulallgara would be able to permanently serve the order in the United States.

**Relevant Facts Relating to Plaintiff The Roman Catholic Diocese of Des Moines**

65. The Roman Catholic Diocese of Des Moines filed an I-360 petition for Fr. Samuel Kwame Danso, a citizen of Ghana, on February 2, 2021, so that he may continue serving as a priest in the Diocese. Receipt # WAC 2190045742.

66. USCIS approved this petition after the amended complaint in this case was filed. The USCIS subsequently granted Fr. Danso's application for adjustment of status to permanent residence, but not before the Diocese had to wait over sixteen months without obtaining certainty as to whether it could employ Fr. Danso permanently in the United States. The Diocese brought Fr. Danso to the United States to serve three small parishes in rural Iowa because the Diocese could not find another priest to serve at these parishes.

**Relevant Facts Relating to Plaintiff First Baptist Church of Kalamazoo**

67. First Baptist Church of Kalamazoo filed an I-360 petition for Rev. Dr. Sanchita Kisku, a citizen of India, so that she may serve as an Associate Pastor for Pastoral Care and Outreach at the Church. First Baptist filed this petition on September 8, 2020. Receipt # WAC 2090165993.

68. USCIS approved this petition after the amended complaint in this case was filed, and Rev. Dr. Kisku filed an application for adjustment of status and accompanying applications for employment authorization and advance parole. USCIS approved Rev.

Dr. Kisku's applications for employment authorization and advance parole on April 18, 2022, but by then her R-1 status had expired on February 10, 2022.

69. USCIS later approved Rev. Dr. Kisku's application for adjustment of status, but not before the Church had to wait some two years without obtaining certainty on whether Rev. Dr. Kisku could serve the Church permanently in the United States.  It also had to expend resources to follow up on her I-360 and application for employment authorization to avoid a lapse in her employment authorization and to prevent her from having to leave the United States before she could apply for adjustment of status.

**Relevant Facts Relating to Grace-Trinity United Church of Christ**

70. Grace-Trinity United Church of Christ filed an I-360 for Jonathan Bangera; his wife, Sharon; and his children, Joshua and Jesse, citizens of India, on March 16, 2020.  USCIS approved this petition on December 2, 2021, and Pastor Bangera and his family filed applications for adjustment of status and accompanying applications for employment authorization and advance parole.

71. USCIS approved Pastor Bangera's application for employment authorization on June 9, 2022.  But in the meantime, Pastor Bangera reached his maximum period of R-1 stay on May 12, 2022 and was without employment authorization for almost a month.

72. USCIS subsequently approved Pastor Bangera's and his family's applications for adjustment of status, but not before Grace-Trinity United Church of Christ had to wait over two years without obtaining certainty as to whether it would be able to permanently employ Pastor Bangera in the United States.

**Relevant Facts Relating to Birmingham Chinese Christian Church**

73. Plaintiff BCCC filed an I-360 petition for its sole pastor, Xuefeng Wu, a citizen of China, on April 20, 2021. Receipt # WAC2190076880.  USCIS approved this petition on November 30, 2021.  Pastor Wu and his wife, Shuying Rao, and son, Tianli Wu, then filed applications for adjustment of status and accompanying applications for employment authorization and advance parole on December 28, 2021.  USCIS approved the family's applications for employment authorization and advance parole on February 18, 2022.

74. USCIS subsequently approved the family's applications for adjustment of status.  *See* case nos. SRC 2290060135, SRC 2290060141, SRC 2290060138. Due to USCIS's processing delays, the BCCC had to wait over a year without obtaining certainty on whether Pastor Wu could serve the Church permanently in the United States.  It also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

75. The BCCC expects and intends to continue filing I-360 petitions for ministers in the future whom it decides should come or continue to minister for it in the United States.

**Relevant Facts Relating to Diocese of Peoria**

76. Plaintiff Diocese of Peoria filed an I-360 petition for one of its priests, Fr. John Mujuni, a citizen of Uganda, on January 28, 2021.  Receipt # WAC 2190038998.  USCIS approved this petition on January 3, 2022, and Fr. Mujuni filed an application for adjustment of status with accompanying applications for employment authorization and advance parole.

77. Although USCIS approved Fr. Mujuni's applications for employment authorization and advance parole on February 25, 2022, Fr. Mujuni's R-1 status expired on December 14, 2021 and he was without employment authorization for over two months. During this time, he was not able to receive his salary from the Diocese.

78. USCIS subsequently granted Fr. Mujuni's application for adjustment of status, Case No. LIN2290134246, but not before the Diocese had to wait some eighteen months without obtaining certainty on whether Fr. Mujuni could serve the Diocese permanently in the United States. It has also had to expend resources to follow up on his I-360 and application for employment authorization to avoid a lapse in his employment authorization and to prevent him from having to leave the United States before he could apply for adjustment of status.

79. The Diocese of Peoria currently has 25 Catholic priests approved for R-1 status. It expects and intends to continue filing I-360 petitions for its priests whom it decides should come or continue to minister for it in the United States.

**Relevant Facts Relating to Missionary Sisters Servants of the Holy Spirit (SSpS)**

80. The SSpS has filed I-360s for three of its members.

    a. It filed an I-360 on July 13, 2020, for Sr. Ana Julieta Bele Bau, who would have reached her maximum period of R-1 stay on December 14, 2022. Receipt # WAC2090141034. USCIS approved this petition on December 2, 2021, and Sr. Bele Bau filed an application for adjustment of status with accompanying applications for employment authorization and advance parole on February 10, 2022. USCIS approved her applications for employment authorization and advance parole on June 9, 2022. USCIS subsequently granted her application for

31

adjustment of status, *See* Case No. SRC 2290078770, but not before the SSpS had

to wait almost two years without obtaining certainty as to whether Sr. Bele Bau

could serve the order permanently in the United States.

b. It filed an I-360 on March 6, 2020, for Sr. Yustina Intan who reached her

maximum period of R-1 stay on January 1, 2022.  Receipt # WAC2090077379.

USCIS approved this petition on December 2, 2021, and Sr. Intan filed an

application for adjustment of status and accompanying applications for

employment authorization and advance parole.  USCIS approved Sr. Intan's

applications for employment authorization and advance parole on April 1, 2022.

But in the meantime, Sr. Intan was without employment authorization for three

months.  She was also unable to visit her sick mother abroad due to the delay in

processing of her I-360 and her resulting inability to apply for and timely receive

an advance parole travel document.  USCIS subsequently approved Sr. Intan's

application for adjustment of status.  *See* case no. LIN 229003718. Due to

USCIS's delays, SSpS had to wait over two years without obtaining certainty as

to whether it would be able to have Sr. Intan serve its order in the United States

on a permanent basis and whether she would be able to stay in the United States.

It also had to expend resources following up on the I-360 and application for

employment authorization to ensure that Sr. Intan's employment authorization did

not lapse and that she did not have to leave the United States before being able to

apply for adjustment of status.

c. It filed an I-360 on March 23, 2020, for Sr. Nadiya Levchenko, who reached her

maximum period of stay on July 16, 2021.  Receipt # WAC2090084629.  USCIS

approved this petition on December 2, 2021, and Sr. Levchenko filed an application for adjustment of status and accompanying applications for employment authorization and advance parole on February 10, 2022. USCIS approved Sr. Levchenko's applications for employment authorization and advance parole on April 1, 2022. But, because of USCIS's delay in adjudicating the I-360, the SSpS had to incur additional expense to file a change of status for this sister to H-1B so she could continue her service with the order during the nine months between the expiration of her R-1 status and the approval of her employment authorization. It had to spend money on this process that would otherwise have been used to serve people in need. The USCIS subsequently approved Sr. Levchenko's application for adjustment of status. *See* case no. LIN 2290134108. Due to USCIS's delay, SSpS had to wait over two years without obtaining certainty as to whether it would be able to have Sr. Levchenko serve its order in the United States on a permanent basis and whether she would be able to stay in the United States. It also had to expend resources following up on the I-360 and application for employment authorization to ensure that Sr. Levchenko's employment authorization did not lapse and that she did not have to leave the United States before being able to apply for adjustment of status.

81. SSpS expects to file additional I-360 petitions for its religious sisters in the future.

**Relevant Facts Relating to Algood Baptist Church, d/b/a Church on a Hill**

82. Algood Baptist Church filed an I-360 to sponsor its pastor Rex Allchurch, a citizen of the United Kingdom, on July 22, 2020 (WAC2090146287). It was not approved until

February 22, 2022 due to USCIS processing delays. Algood Baptist Church sought an expedite of this petition on February 1, 2022, which USCIS denied two days later.

83. After approval of this petition, Pastor Allchurch and his wife and four of his children filed applications for adjustment of status, employment authorization, and advance parole on April 4, 2022. USCIS has since approved Pastor Allchurch's and his wife and children's applications for employment authorization and advance parole, and subsequently their adjustment applications, *see* case numbers SRC 2290107226, SRC 2290107223, SRC 2290107235, SRC 2290107232, SRC 2290107229, SRC 2290107238.

84. Because of USCIS's delay in processing Algood Baptist Church's I-360, the church had to wait some two years without obtaining certainty as to whether it would be able to employ Pastor Allchurch on a permanent basis and whether he and his family would be able to stay in the United States. It also had to expend resources following up on the status of the I-360 and employment authorization applications to ensure Pastor Allchurch's employment authorization did not lapse and that he and his family did not have to leave the United States before being able to file for adjustment of status.

85. Algood Baptist Church presently employs another minister in R-1 status and intends to file I-360 petitions for additional ministers in the future.

**Relevant Facts Relating to Evangelical Lutheran Church of America (ELCA), Indiana-Kentucky Synod**

86. ELCA, Indiana-Kentucky Synod filed I-360s for two of its pastors:

a. It filed an I-360 for Pastor Evangeline Mary Kamalini Anderson, a citizen of India, on November 20, 2019 (WAC 2090026909). Due to processing delays, USCIS did not approve this petition until March 22, 2022. After the approval of this petition, Pastor Anderson and her husband and daughter filed applications for

34

adjustment of status, employment authorization, and advance parole on April 15, 2022. On May 28, 2022, USCIS approved Pastor Anderson's application for employment authorization. It subsequently approved her and her family's applications for adjustment of status. *See* case numbers LIN 2290200930, LIN 2290200927, LIN 2290200924. Due to USCIS's delay, the Synod had to wait over two and half years without obtaining certainty as to whether it would be able to employ Pastor Anderson on a permanent basis and whether she and her family would be able to stay in the United States. It also had to expend resources following up on the I-360 and applications for employment authorization to ensure that Pastor Anderson's employment authorization did not lapse and that she and her family did not have to leave the United States before being able to apply for adjustment of status. Finally, it had to expend resources filing an application to change the status of Ms. Anderson's daughter to F-1 status to ensure she did not have to leave the United States before being able to file for adjustment of status as she aged out of her R-2 status while waiting for USCIS's processing delay of the I-360 petition to be resolved.

b. It filed an I-360 for Pastor Emmanuel Penumaka, a citizen of India, on December 9, 2019 (WAC 2090037626). Due to processing delays, USCIS did not approve this petition until December 7, 2021. After approval of this petition, Pastor Penumaka and his wife and two children filed applications for adjustment of status, employment authorization, and advance parole on December 9, 2021. On March 22, 2022, USCIS approved their applications for employment authorization and advance parole. It subsequently approved their applications for

adjustment of status. *See* case numbers LIN 2290124417, LIN 2290124408, LIN 2290124411, LIN 2290124414. Due to USCIS's delay, the Synod had to wait over two and half years without obtaining certainty as to whether it would be able to employ Pastor Penumaka on a permanent basis and whether he and his family would be able to stay in the United States. It also had to expend resources following up on the I-360 and applications for employment authorization to ensure that Pastor Penumaka's employment authorization did not lapse and that he and his family did not have to leave the United States before being able to apply for adjustment of status.

87. ELCA, Indiana-Kentucky Synod expects to file additional I-360 petitions for religious workers in the future.

**Relevant Facts Relating to Evangelical Lutheran Church of America (ELCA), New Jersey Synod**

88. ELCA, New Jersey Synod filed an I-360 for Eunyoung Kim, a citizen of South Korea, on February 18, 2020 (WAC 2090068133), so that Ms. Kim could serve as a mission developer for the Synod. Due to processing delays, USCIS did not approve this petition until February 17, 2022. After approval of this petition, Ms. Kim filed applications for adjustment of status, employment authorization, and advance parole on March 1, 2022. On April 14, 2022, USCIS approved her applications for employment authorization and advance parole. It subsequently approved her application for adjustment of status. *See* case number MSC 2290322674. Due to USCIS's delay, the Synod had to wait over two years without obtaining certainty as to whether it would be able to employ Ms. Kim on a permanent basis and whether she would be able to stay in the United States. It also had to expend resources following up on the I-360 and applications for employment

36

authorization to ensure that Ms. Kim's employment authorization did not lapse and that she did not have to leave the United States before being able to apply for adjustment of status.

89. ELCA, New Jersey Synod expects to file additional I-360 petitions for religious workers in the future.

## V.    Causes of Action

### Count 1. First Amendment Free Exercise Clause Claims

90. 8 C.F.R. 245.2(a)(2)(i)(B) is not a neutral rule of general application.  It expressly distinguishes between non-religious and religious employers, and withholds the benefit of concurrent filing of visa petitions and adjustment of status applications only from religious employers.  Thus, the policy is subject to strict scrutiny and must end.

91. Because USCIS does not provide methods for religious employers to concurrently process their applications for ministers and religious workers, while allowing non-religious employers more protections like concurrent processing for their workers, USCIS's policies violate the First Amendment of the United States Constitution's Free Exercise Clause.

### Count 2. First Amendment Establishment Clause Claims

92.  Neither the Immigration and Nationality Act nor defendants' regulations, practices or policies are neutral rules of general application.  Together with processing delays, they directly result in chilling or interfering with the plaintiffs' rights to select and employ ministers of religion within their respective denominations.  Forcing the plaintiffs to dismiss ministers owing to onerous procedural obstacles and unreasonable practices and delays violates the United States Constitution's Establishment of Religion Clause.

**Count 3. Religious Freedom Restoration Act Violations**

93. Defendants' regulations and policies place a substantial burden on the plaintiffs' religious exercise in violation of RFRA. Combined with USCIS's processing times sometimes exceeding two years, they ensure that religious employers like plaintiffs will lose the services of their chosen religious ministers and workers. The withholding of benefits provided to other employers such as concurrent filing places a substantial burden on the plaintiffs' religious exercise and does not serve a compelling government interest, nor is this the least restrictive means of carrying out the policies of the immigration laws.

**Count 4. Immigration and Nationality Act Claims**

94. 8 C.F.R. 245.2(a)(2)(i)(B) violates the Immigration and Nationality Act, 8 U.S.C. § 1255(a), by creating separate standards and limiting who may apply for adjustment of status based on whether the underlying visa petition is from a non-religious employer or a religious employer. The statute contains no such distinction. If the statute allows for concurrent filing for one class of employers, it must do so for religious employers as well. *See also,* 8 C.F.R. §245.1(g)(1) ("A preference immigrant visa is considered available for accepting or processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current).").

95. 8 C.F.R. 245.2(a)(2)(i)(B) also violates the INA, 8 U.S.C. § 1255(a) by purporting to restrict when a religious organization's employee may file an application to adjust status, whereas the statute contains no such restriction. Under the statute, USCIS may deny a deniable filing, but it may not reject a properly filed application.

96. Defendants' processing delays also violate 8 U.S.C. § 1571(b), in that: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application…."

97. Defendants' processing delays, much more severe for religious-based I-360 petitions than for other employment-based visa petitions, also violate 8 U.S.C. § 1255(k), which is intended to protect employment-based immigrants and employers by preventing USCIS's processing delays from impeding their ability to adjust their status.

### Count 5. Administrative Procedure Act Claims

### STRICKEN PER THE COURT'S MEMORANDUM OPINION AND ORDER

### Count 6. Due Process and Equal Protection Claims

98. 8 C.F.R. 245.2(a)(2)(i)(B) violates equal protection by creating separate standards and limiting who may apply for adjustment of status based on whether the underlying visa petition is from a non-religious employer or a religious employer. The statute contains no such distinction. If the statute allows for concurrent filing for one class of employers, it must do so for religious employers as well.

99. USCIS's processing delays far exceed Congress's expectation that petitions and applications for employment-based immigration benefits may be filed when a visa is available, and should be adjudicated within a normal maximum period of 180 days. Delays of 2 or more years, as some of the plaintiffs have experienced, are abnormal and frustrate these legislative priorities, depriving U.S.-based religious organizations of the ability to retain religious ministers and workers, while favoring secular employers, violating both due process and equal protection.

### VI.    Relief Sought

WHEREFORE, based on all of the foregoing, plaintiffs respectfully request this Court to:

1. Declare 8 C.F.R. 245.2(a)(2)(i)(B) to violate the U.S. Constitution's First Amendment, Fifth Amendment, Religious Freedom Restoration Act, and Immigration and Nationality Act.;

2. Order defendants to accept concurrent filing of Forms I-360 and I-485 for any applicant for whom an immigrant visa is available.  8 U.S.C. § 1255(a);

3. Order defendants to immediately adjudicate any of plaintiffs' additional Forms I-360 and related forms that will have been pending for at least 180 days;

4. Order such other relief as the Court may determine to be just and equitable.

Respectfully submitted,

_s/Scott D. Pollock_____
Attorney for the Plaintiffs

Scott D. Pollock
Christina J. Murdoch
Scott D. Pollock and Associates, P.C.
105 W. Madison, Suite 2200
Chicago, Illinois 60602
Tel. (312) 444-1940
Fax (312) 444-1950
spollock@lawfirm1.com

Stephen L. Tyma
Law Office of Stephen L. Tyma, P.C.
105 W. Madison, Suite 2200
Chicago, IL 60602
Tel. (312) 372-3920
Fax (312) 372-3780
styma@tymalaw.com

Charles H. Wintersteen
Wintersteen Law Group
53 W. Jackson Blvd, Suite 809
Chicago, Illinois 60604
Tel. (312) 566-0301
Fax (312) 588-0437
chw@charleswintersteen.com

## <u>CERTIFICATE OF SERVICE</u>

Scott D. Pollock, an attorney hereby certifies that the foregoing Plaintiffs' Fourth Amended Complaint was served on January 19, 2023 on counsel of record for the Defendants, in accordance with FED R. CIV. PRO. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) system as to ECF filers on:

> Craig A. Oswald
> Elizabeth Treacy
> U.S. Attorney's Office
> Northern District of Illinois, Eastern Division
> 219 S. Dearborn St., Fifth Floor
> Chicago, IL 60604

> Aaron S. Goldsmith
> Office of Immigration Litigation
> U.S. Department of Justice
> Liberty Square Building
> 450 5th St., N.W.
> Washington, D.C. 20530-0001

> __s/Scott D. Pollock_____
> Scott D. Pollock
> Attorney for the Plaintiffs
> Scott D. Pollock & Associates, P.C.
> 105 W. Madison, Suite 2200
> Chicago, IL  60602
> (312) 444-1940