IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOCIETY OF THE DIVINE WORD, Chicago Province; NATIONAL SPIRITUAL ASSEMBLY OF THE BAHA'IS IN THE UNITED STATES; ILLINOIS GREAT RIVERS CONFERENCE OF THE UNITED METHODIST CHURCH; PONTIFICAL NSTITUTE FOR FOREIGN MISSIONS; BROWN MISSIONARY BAPTIST CHURCH; INDIA HERITAGE FOUNDATION, NJ/NY INC.; BAPTIST MID-MISSIONS; GENERAL SECRETARIAT OF THE FRANCSICAN MISSIONS, INC.; THE ROMAN CATHOLIC DIOCESE OF DES MOINES; FIRST BAPTIST CHURCH OF KALAMAZOO; GRACE-TRINITY UNITED CHURCH OF CHRIST; BIRMINGHAM CHINESE CHRISTIAN CHURCH; DIOCESE OF PEORIA, ILLINOIS; MISSIONARY SISTERS SERVANTS OF THE HOLY SPIRIT; ALGOOD BAPTIST CHURCH, D/B/A CHURCH ON A HILL; EVANGELICAL LUTHERAN CHURCH OF AMERICA (ELCA), INDIANA-KENTUCKY SYNOD; & EVANGELICAL LUTHERAN CHURCH OF AMERICA (ELCA), NEW JERSEY SYNOD, | Case No. 21 CV 3650  Judge Robert W. Gettleman |
| Plaintiffs, | |
| v. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security; and DONNA P. CAMPAGNOLO, Director, USCIS California Service Center (CSC), | |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs are tax-exempt religious institutions and bring their fourth amended complaint

against defendants United States Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, Secretary of the Department of Homeland Security; and Donna P. Campagnolo, Director of the USCIS California Service Center ("CSC") (collectively, "defendants"). The complaint alleges that defendants' regulations, policies, and practices violate the U.S. Constitution and various federal statutes. Count 1 alleges violations of the Free Exercise Clause of the First Amendment; Count 2 alleges violations of the Establishment Clause of the First Amendment; Count 3 alleges violations of the Religious Freedom Restoration Act ("RFRA"), 28 U.S.C. § 2201; Count 4 alleges violations of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255; and Count 6 alleges violations of the Due Process and Equal Protection Clauses.[1] On April 17, 2023, plaintiffs moved for summary judgment on all counts (Doc. 62), and defendants cross-moved for summary judgment on May 18, 2023 (Doc. 65). For the reasons discussed below, the court denies plaintiffs' motion (Doc. 62), and grants defendants' motion (Doc. 65).

## BACKGROUND

As tax-exempt religious institutions, plaintiffs claim that they exercise their religious beliefs and advance them in practice by employing foreign-born ministers and international religious workers.[2] Ministers and other religious workers can seek classification in the employment-based immigrant preference category for "special immigrants." 8 U.S.C. § 1154(a)(1)(G)(i). What plaintiffs term the "special immigrant religious worker" category is

---

[1] Count 5 formerly alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, but the court dismissed that count in its ruling on defendants' motion to dismiss (Doc. 55).
[2] To resolve the instant motion, the court evaluates the relevant facts from the parties' Local Rule 56.1 statements. While the parties agree that their disputes center on "strictly legal" issues, the court finds that each party's statement provides helpful context. Where plaintiffs have not complied with the Local Rule requirements by failing to cite specific evidentiary material that supports their asserted facts, the court disregards those facts. Further, the court overrules defendants' objection under Local Rule 56.1(d)(5), which allows plaintiffs (the "movant") to file its statement of material facts in 80 or less numbered paragraphs; plaintiffs have filed 66 numbered paragraphs.

known as "EB-4." 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C). The EB-4 category includes other types of workers, such as certain juveniles, U.S. government employees who are abroad, members of the U.S. armed forces, and broadcasters. 8 U.S.C. § 1101(a)(27). Other employment-based immigrant preference categories are priority workers ("EB-1"), advanced degree and exceptional ability workers ("EB-2"), professional and skilled workers ("EB-3"), and individuals involved in job creation ("EB-5"). 8 U.S.C. §§ 1153(b)(1),(2),(3), and (5).

The INA allows up to 5,000 visas per fiscal year for EB-4 workers, and the process of employing them requires a series of steps by employers (such as plaintiffs) and their non-citizen employees. Employers first seek EB-4 classification for their non-citizen employees by filing a Form I-360 petition with the Secretary of Homeland Security. 8 C.F.R. § 204.5(a). After USCIS approves the Form I-360 petition, the non-citizen employee must file a Form I-485 application for adjustment of status to "lawful permanent resident," otherwise known as "green card holder." 8 C.F.R. § 245.2.

USCIS regulates employment-based immigrant preference categories and adjustment of status based on its discretion under § 1255(a), which provides that:

> "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." [Emphasis added.]

For EB-4 workers, USCIS has interpreted the INA to determine that a visa is "immediately available" only after USCIS has approved the corresponding Form I-360 petition. 8 C.F.R. § 245.2(a)(2)(i)(B).

In the instant case, plaintiffs are employers who filed Form I-360 petitions on behalf of

3

specific non-citizen employees who were already in the United States on non-immigrant ("R-1") visas. R-1 visas allow non-citizen employees to stay in the country for up to five years, and potentially even longer if they successfully "adjust status" prior to their R-1 visa expiration. If an R-1 visa holder does not adjust their status before its expiration, the individual becomes unlawfully present in the United States and ineligible to adjust status after 180 days.[3] 8 U.S.C. §§ 1255(c), (k). The non-citizen employees are not parties to the instant case.

Employment-based immigrants in other preference categories must complete different steps to adjust their status. For example, employers of non-citizen workers in the EB-1, EB-2, and EB-3 preference categories file Form I-140 petitions instead of Form I-360 petitions. 8 C.F.R. § 204.5(a). Some of these employers must test the U.S. labor market by seeking a labor certification from the United States Department of Labor. 8 U.S.C. § 1182(a)(5)(A)(i). However, just like EB-4 employees, employees in the other preference categories must file Form I-485 applications for status adjustment. 8 C.F.R. §245.2(a)(3). The difference is that other categories of employment-based workers can file their Form I-485 applications <u>concurrently</u> with their Form I-140 petitions, whereas EB-4 employees can file their Form I-485 applications only <u>after</u> the USCIS approves their employers' Form I-360 petitions. 8 C.F.R. § 245.2(a)(2)(i)(B).

The difference in concurrent filing prohibitions between employment-based preference categories is central to this case. In 1991, the former Immigration and Naturalization Service ("INS") eliminated concurrent filing under 8 U.S.C. § 1153(b) for all categories. 56 Fed. Reg. 49,839 (Oct. 2, 1991). In 2002, however, INS authorized concurrent filing for EB-1, EB-2, and

---

[3] USCIS does not require special immigrant religious workers to be present in the United States on R-1 visas before filing Form I-360 petitions. Religious workers can file for EB-4 categorization while abroad, either after their R-1 visa expires or without an R-1 visa (or another non-immigrant visa) to begin with.

4

EB-3 petitioners. 67 Fed. Reg. 49,561 (July 31, 2002). In 2008, the Department of Homeland Security ("DHS") considered, but declined, to extend concurrent filing to EB-4 petitioners. 73 Fed. Reg. 72,276 (Nov. 26, 2008).

In denying concurrent filing for EB-4 petitioners, the agency reasoned that non-concurrent filing improves its ability "to detect and deter fraud and other abuses in the religious worker program," citing a study by the Government Accountability Office that identified a high incidence of fraud in that program. 73 Fed. Reg. 72,276, 72,277, 72,284 (Nov. 26, 2008). DHS concluded that non-concurrent filing is "a valuable fraud deterrent," and aligned with its statutory mandate to eliminate or reduce fraud among special immigrant religious workers and protect the integrity of the program. 72 Fed. Reg. 20,443, 20,450 (Apr. 25, 2007); 73 Fed. Reg. 72,284 (Nov. 26, 2008). In doing so, the agency recognized that individuals sponsored by religious organizations may obtain admission to the United States using other means. 73 Fed. Reg. 72,283 (Nov. 26, 2008).

In the instant case, USCIS has approved all plaintiffs' Form I-360 petitions, but plaintiffs state that they continue to be harmed by USCIS's regulation prohibiting concurrent filing for EB-4 petitioners, 8 C.F.R. § 245.2(a)(2)(i)(B), because they anticipate filing Form I-360 petitions in the future. They complain that the inability to concurrently file Form I-485 applications with Form I-360 petitions results in processing delays that harm plaintiffs because their employees are time-limited by R-1 status. Consequently, plaintiffs anticipate experiencing uncertainty and disruptions in religious services, in addition to diverted resources, which they expend to follow up on pending petitions to avoid lapses in employment authorization.[4] According to plaintiffs,

---

[4] Plaintiffs provide a declaration from Jack Iyer ("Iyer"), which states that plaintiff Siddhi Vinayaka Cultural Center, Inc.'s non-resident employee attempted to file his application for adjustment of status before USCIS approved his plaintiff employer's Form I-360 petition, and USCIS denied the employee's application. USCIS cited § 245.2(a)(2)(i)(B) and stated that his "application cannot be considered properly filed and therefore cannot be

they predict that they will be forced to choose between losing their employees' religious services or facing sanctions. Ultimately, plaintiffs allege that the USCIS's regulations "discriminate against U.S.-based religious employers and their selected international religious workers, while interfering with their [constitutional and statutory] rights to appoint and employ ministers."

On July 27, 2022, defendants moved to dismiss plaintiffs' third amended complaint for lack of jurisdiction, which the court granted in part and denied in part in Society of Divine Word v. United States Citizenship & Immigration Services ("Divine Word I"), No. 21 CV 3650, 2022 WL 17820973 (N.D. Ill. Dec. 20, 2022). The court concluded that, at that stage, plaintiffs established standing, and the case was not moot, but it accepted defendants' argument that plaintiffs' challenge to 8 C.F.R. § 245.2(a)(2)(i)(B) pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§704–706, was barred by the relevant statute of limitations.

Specifically, the court applied the statute of limitations provision in 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Because USCIS promulgated § 245.2(a)(2)(i)(B) in 2002, the court concluded that plaintiffs' claim pursuant to the Administrative Procedure Act ("APA") expired in 2008. It rejected plaintiffs' argument that an exception to the statute of limitations applied under American Stewards of Liberty v. Department of Interior, 960 F.3d 223, 228 (5th Cir. 2020), cert. denied sub nom. Yearwood v. Department of the Interior, 141 S. Ct. 1062 (2021). Under this exception, plaintiffs argued that their claim under the APA was not time-barred because the agency substantively agency applied or enforced the regulation against them within the past six years.

**LEGAL STANDARD**

---

approved." Iyer states that plaintiff and its employee spent thousands of dollars in filing fees prior to denial.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Where both parties file motions for summary judgment, the court applies the same standards of review. See Wis. Alumni Research Found. v. Xenon Pharm., Inc., 591 F.3d 876, 882 (7th Cir. 2010). The court views all facts and inferences in the light most favorable to the nonmovant on each motion, on an individual and separate basis. Id.

## DISCUSSION

In the instant case, the parties cross-move for summary judgment on all counts of plaintiffs' fourth amended complaint, which centers on USCIS's regulation governing concurrent filing of visa petitions and applications for adjustment of status for EB-4 petitioners, 8 C.F.R. § 245.2(a)(2)(i)(B). The court begins by evaluating defendants' argument that plaintiffs lack standing under Article III to challenge the regulation. To establish standing based on threatened future harm, plaintiffs must demonstrate an imminent, not speculative, injury that is redressable by a favorable decision from the court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Upon defendant's motion to dismiss, the court ruled that plaintiffs established standing

7

with their allegations of threatened future harm.[5] See Divine Word I, 2022 WL 17820973, at *5. The court explained that standing was "based on their allegations of disparate and discriminatory treatment in the process of filing EB-4 motions, and their alleged harm is redressable." Id. Defendants renew their objections regarding standing at summary judgment and argue that plaintiffs lack standing because they have not provided sufficient evidence to demonstrate that they suffer from non-speculative, redressable future injuries. Instead, defendants argue that plaintiffs' alleged harms rely on a hypothetical series of speculative events.[6]

The court disagrees with defendants that plaintiffs lack standing at this stage. Plaintiffs' affidavits are sufficient to establish standing because their theory of standing is based on their allegations of disparate and discriminatory treatment. Specifically, plaintiffs argue that, under the current regulatory regime, USCIS will process their future non-concurrently filed Form I-360 petitions and Form I-485 applications for special immigrant religious workers (EB-4) in a different manner than USCIS processes Form I-140 petitions and Form I-485 applications for secular organizations, which use other employment-based preference categories (EB-1, EB-2, EB-3). If USCIS extended concurrent filing to EB-4 petitioners, then plaintiffs' harm (different regulatory treatment under § 245.2(a)(2)(i)(B)) would be redressed. While it is true that plaintiffs emphasize longer processing times, in addition to extra resource expenditure, when seeking employment authorization for special immigrant workers, time and cost are merely manifestations of plaintiffs' primary alleged harm (different regulatory treatment under § 245.2(a)(2)(i)(B)), rather than independent harms that confer standing in this case.[7] At this

---

[5] Plaintiffs did not establish standing with their previously filed Form I-360 petitions, which were all approved by USCIS.
[6] According to defendants, this chain of events relies on plaintiffs' future filing of Form I-360 petitions for EB-4 workers on R-1 visas, which USCIS must fail to adjudicate in time for their employees' Form I-485 applications to be granted. Moreover, defendants emphasize that plaintiffs' future injury depends upon whether USCIS would grant their future employees' concurrently filed Form I-485 applications prior to the lapse of their R-1 visas.
[7] The court considers processing time and resource expenditure to be factors in analyzing whether

stage, plaintiffs have established that § 245.2(a)(2)(i)(B) treats them in a different manner than secular organizations, and that is enough to confer standing.

Defendants' second argument is that plaintiffs' challenges to 8 C.F.R. § 245.2(a)(2)(i)(B) are barred by the six-year statute of limitations in 28 U.S.C. § 2401(a), and plaintiffs' RFRA claim is barred by the four-year statute of limitations in 28 U.S.C. § 1658(a). Defendants argue that the court's reasoning in dismissing plaintiffs' former claim pursuant to the APA equally applies to plaintiffs' other constitutional and statutory claims.

The court begins by agreeing with defendants that plaintiffs' challenge pursuant to the INA is time-barred for the same reason as their challenge under the APA, and thus grants summary judgment to defendants on Count 4.[8] See Divine Word I, 2022 WL 17820973, *5. Where the cause of action is based on USCIS's conduct in interpreting the breadth of its discretion to promulgate regulations, in addition to exercising its discretion by promulgating regulations pursuant to 8 U.S.C. § 1255, such challenges are time-barred.

The court, however, disagrees that its reasoning applies equally to plaintiffs' claims under the RFRA or the U.S. Constitution.[9] It is not that § 2401(a) does not apply to constitutional or statutory challenges. See, e.g., Francia v. Sec'y of the Army, No. 83 C 6620, 1985 WL 2674, at *2 (N.D. Ill. Sept. 20, 1985). The difference is that plaintiffs' challenges under the RFRA and Constitution are less focused on USCIS's interpretation and exercise of its discretion in the act of promulgating § 245.2(a)(2)(i)(B) in 2002. Instead, these claims depend on whether and how

---

§ 245.2(a)(2)(i)(B) imposes a substantial burden on plaintiffs' exercise of their religions (a question on the merits), rather than factors that demonstrate standing, or lack thereof (a jurisdictional question).

[8] Because the court determines that plaintiffs' challenge pursuant to the INA is time-barred, it does not address whether § 245.2(a)(2)(i)(B) is ultra vires under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), as articulated by the Ninth Circuit in Ruiz-Diaz v. United States, 618 F.3d 1055 (9th Cir. 2010).

[9] The court rejects defendants' argument that plaintiffs failed to address defendants' argument that their claims are time-barred under the four-year statute of limitations for RFRA claims; plaintiffs' argument under RFRA is the same as their argument under 28 U.S.C. § 2401(a).

9

USCIS's regulation continues to impact plaintiffs' specific employment decisions, and their participation in the process of obtaining employment-based visas. See Commonwealth Edison Co. v. U.S. Nuclear Regul. Comm'n, 830 F.2d 610, 614 (7th Cir. 1987) ("Congress's grant of power to review one act (the promulgation of the rule) should not serve to circumscribe the power to review another act (the application of a rule by an agency in a specific proceeding to enforce the rule).").

This conclusion makes sense in the context of USCIS's regulatory scheme. According to plaintiffs, they are challenging the way that USCIS's concurrent filing regulations impact the ease of their ability to hire certain foreign-born ministers and international religious workers compared to secular employers. The court finds that the statute of limitations for plaintiffs' constitutional and RFRA challenges began to run when plaintiffs filed their Form I-360 petitions without a corresponding, concurrently filed Form I-485 application. Indeed, defendants do not appear to dispute the counterfactual: if plaintiffs were notified by USCIS that their non-resident employees' Form I-485 applications were ultimately denied due to (prohibited) concurrent filing, the relevant statute of limitations for their claims against defendants would accrue at the time of denial. Thus, the relevant statutes of limitations do not require resolving defendants' motion in their favor on Counts 1, 2, 3, and 6.

The court next evaluates plaintiffs' challenge to § 245.2(a)(2)(i)(B) pursuant to the RFRA in Count 3. According to defendants, the regulation does not violate the RFRA by imposing a substantial burden on plaintiffs, and it is justified by a compelling government interest. Plaintiffs counter that § 245.2(a)(2)(i)(B) violates the RFRA because it impacts their employment decisions by imposing the non-concurrent process they use to file employment-based petitions for their workers.

The RFRA prohibits the government from substantially burdening religious exercise. 42 U.S.C. § 2000bb-1(a). If the government substantially burdens a party's exercise of religion, that party is entitled to an exemption from the rule unless the government demonstrates that the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b). A government action imposes a substantial burden under the RFRA when it interferes with a party's ability to practice their religion by pressuring them to act contrary to their religious beliefs. See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988). There is no substantial burden when the party is not subject to government pressure or coercion to do so. See Mayle v. United States, 891 F.3d 680, 687 (7th Cir. 2018).

In Ruiz-Diaz v. United States ("Ruiz-Diaz III"), 703 F.3d 483 (9th Cir. 2012), the Ninth Circuit determined that § 245.2(a)(2)(i)(B) does not impose a substantial burden on foreign religious workers because it does not affect their ability to practice their religion.[10] Id. at 486. The court reasoned that although the regulation may delay foreign-born religious workers' ability to file visa applications, it does not force them to choose between following the tenets of their religion and receiving a government benefit, or otherwise pressure them to modify their religious practices. Id. The court emphasized that "[t]he fundamental flaw in the plaintiffs' reliance on RFRA is that the challenged regulation does not affect their ability to practice their religion. They are subject to removal after five years because their visas have expired, not because they are practicing their religion." Id.

---

[10] Plaintiffs attempt to distinguish Ruiz-Dias III by arguing that the case discussed only claims from individual foreign-born religious workers, not from religious organizations like plaintiffs. This is incorrect. See Ruiz-Diaz III, 703 F.3d 483, 484–85 (9th Cir. 2012) ("Plaintiffs represent a class of non-citizen religious workers, together with the organizations that employ them, who have been admitted to this country on five-year religious worker visas."). They also argue that Ruiz-Diaz III relied on outdated case law and therefore was wrongly decided, but regardless, this court does not rely on the cited case law in the instant case.

Defendants cite the court's reasoning in Ruiz-Diaz III, and further argue that § 245.2(a)(2)(i)(B) does not require special immigrant religious workers to file in the EB-4 category; instead, they can concurrently file using the other employment-based preference categories (EB-1, EB-2, EB-3). Defendants argue that it is not clear how plaintiffs could modify their religious beliefs to change any delay or cost under § 245.2(a)(2)(i)(B), because no modification would allow them to employ temporary religious workers for longer than their R-1 visas allow them to do so. Defendants argue that § 245.2(a)(2)(i)(B) impacts only the time and manner that plaintiffs can obtain employment authorization for their foreign-born religious workers.

Plaintiffs counter that § 245.2(a)(2)(i)(B) violates the RFRA because their decisions regarding "when and where religious workers may be put into religious service" are protected by the First Amendment. They argue that § 245.2(a)(2)(i)(B) places "extreme and sometimes insurmountable burdens" on their ability to staff their religious missions. These burdens include processing delays, resource expenditure to follow up on and seek expedited adjudication of petitions, and lapses in employment authorization. Further, plaintiffs argue that § 245.2(a)(2)(i)(B) does not need to be the only means available to exercise their religion (i.e., to determine when and where to employ religious workers) for the restrictive regulation to establish a substantial burden. See Holt v. Hobbs, 574 U.S. 352, 361–62 (2015).

The court agrees with plaintiffs that § 245.2(a)(2)(i)(B) is still capable of substantially burdening their religious exercise even if they can use other employment-based immigration categories to hire their foreign-born religious workers. That being said, the court disagrees with plaintiffs that they have demonstrated that these alleged burdens (time, planning, and cost) have a substantial impact on their ability to determine when and where to hire and fire the religious

12

ministers of their choice. Instead, § 245.2(a)(2)(i)(B) requires employers to plan the timing of employment decisions based on immigration status, and potentially limits the pool of qualified applicants that plaintiffs can choose from if they fail to plan accordingly.

Limiting the pool of available employee based on immigration status is not the same as interfering with a religious organization's hiring decision by pressuring them to hire or fire a particular employee, as in Hosanna Tabor Evangelical Lutheran Church and School v. EEOC, 565 U.S. 171 (2012). In Hosanna, the government imposed an unwanted minister upon the church, and the plaintiff complained that the imposition impacted the church's faith and mission. Id. at 188. In contrast, § 245.2(a)(2)(i)(B) does not require plaintiffs to employ or terminate certain ministers; rather, it provides a timeline for religious employers to employ the foreign-born workers of their choice.[11] The regulation does not pressure them into picking, or not picking, certain ministers within the available pool, or otherwise interfere with matters of faith, doctrine, or "closely linked matters of internal government." See Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S. Ct. 2049, 2060 (2020); Illinois Bible Colleges Ass'n v. Anderson, 870 F.3d 631, 641–42 (7th Cir. 2017).

Because the court also concludes that defendants are entitled to summary judgment on Count 3 pursuant to the RFRA, the court concludes that defendants are necessarily entitled to summary judgment on Counts 1 and 2 pursuant to the Free Exercise and Establishment Clauses of the First Amendment, which are duplicative counts. Congress enacted the RFRA to protect a broader range of religious exercise than the First Amendment in light of the Supreme Court's decision in Employment Division, Department of Human Resources of Oregon v. Smith, 494

---

[11] Because the court determines that § 245.2(a)(2)(i)(B) does not impose a substantial burden on plaintiffs' religious exercise, the court does not evaluate whether plaintiffs are entitled to an exemption, which is a case-by-case evaluation, although defendants argue that plaintiffs can, but have failed to, apply for such exemptions. See Gonzales v. O Centro Espirita Beneficente do Uniao do Vegetal, 546 U.S. 418, 436 (2006).

U.S. 872 (1990).[12]  See Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 694 (2014).  Even if plaintiffs had a successful claim under the RFRA, they still would not succeed under the First Amendment.  To the extent that plaintiffs can petition USCIS to allow them to hire foreign-born religious workers, § 245.2(a)(2)(i)(B)'s prohibition on concurrent filing is not based on plaintiffs' religious identity.  See Trinity Lutheran Church of Columbia v. Comer, 137 S. Ct. 2012, 2019 (2017).  Section 245.2(a)(2)(i)(B) is based on a demonstrated risk of fraud in the special immigrant category, and in particular, the religious worker program.

Plaintiffs' next argument is that § 245.2(a)(2)(i)(B) violates the Equal Protection and Due Process Clauses because it discriminates against them on the basis of religion.[13]  The Ninth Circuit also addressed this argument in Ruiz-Diaz v. United States (Ruiz-Diaz III), 703 F.3d 483, 487 (9th Cir. 2012), finding that § 245.2(a)(2)(i)(B) does not target any religious group and affects all members of the EB-4 preference category.  Further, the court concluded that even if the regulation treated the plaintiffs differently than other employment-based visa applicants, the difference required only a rational basis to survive an equal protection challenge, due to Congress's broad power over the naturalization and immigration processes.  Id. at 486–87 (citing Fiallo v. Bell, 30 U.S. 787 (1977); Mathews v. Diaz, 426 U.S. 67 (1976)).  The court in Ruiz-Diaz III found that USCIS's prohibition on concurrent filings is a "rational regulatory attempt to reduce fraud in the religious worker program," which is a legitimate interest.  703 F.3d at 487.

In the instant case, the court agrees with the Ninth Circuit's reasoning in Ruiz-Diaz III.

---

[12] Plaintiffs offer no argument to demonstrate how they could succeed on a free exercise claim if the court rules against them under the RFRA, which imposes a lower threshold for violations than the First Amendment.
[13] Defendants argue that they did not violate plaintiffs' due process rights under the Fifth Amendment because, as the Ninth Circuit reasoned in Ruiz-Dias III, plaintiffs do not have a legitimate claim of entitlement to have their visa applications filed concurrently with their EB-4 petitions, or their visa applications approved before their temporary visas expire.  See Ruiz-Diaz III, 703 F.3d at 487–88.  The court agrees, but finds that plaintiffs' equal protection and due process argument is based on the equal protection component of the Fifth Amendment, which applies to the federal government.  See Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

See also St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 638 (7th Cir. 2007) (noting that where a plaintiff's free exercise claim has failed, the Supreme Court applies only rational basis scrutiny in its subsequent review of an equal protection fundamental right to free exercise based on the same facts); Canto v. Holder, 593 F.3d 638, 641 (7th Cir. 2010) (noting that judicial review of legislative decisions in the immigration context are "extremely limited"). Moreover, as discussed above, this court concludes that § 245.2(a)(2)(i)(B) is not based on religion; it is based on the demonstrated risk of fraud in the special immigrant religious worker program, which is not subject to other requirements that might avoid fraud in other employment-based categories. For example, some employers must receive certification from the Department of Labor that there are insufficient workers who are able, willing, qualified, and available to perform the required labor. 8 U.S.C. § 1882(a)(5)(A)(i)(I).

Plaintiffs themselves admit that the requirements for other employment-based preference categories would pose certain difficulties for many religious employers, and the court notes that such difficulty is likely why Congress created the EB-4 category in the first place. Plaintiffs do not address whether the overall regulatory scheme might, in fact, be advantageous for special immigrant religious workers compared to secular employers, in terms of delay and cost. In fact, plaintiffs provide no evidence to suggest that EB-4 petitions take more or less time or cost more or less money than other petitions in other employment-based categories. Plaintiffs also do not address whether special immigrant religious worker petitioners are similarly situated with other special immigrant petitioners (some of whom may concurrently file under 8 U.S.C. §1255(c)). Consequently, the court grants summary judgment for defendants on Count 6.

## **CONCLUSION**

For the reasons stated above, the court denies plaintiffs' motion (Doc. 62), and grants defendants' motion on all counts (Doc. 65).

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: July 20, 2023**